**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Gary ODOM (92–5822/5823/5827); Leonard Johnson (92–5824); Terrance Bulger (92–5825), Defendants–Appellants.**

Nos. 92–5822, 92–5823, 92–5824,
92–5825, 92–5827.

United States Court of Appeals,
Sixth Circuit.

Argued June 8, 1993.

Decided Jan. 10, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied in Nos. 92–5824 and 92–5825 March 1, 1994.*

---

* Keith, Circuit Judge, would grant rehearing for the reasons stated in his dissent.

Van S. Vincent, Asst. U.S. Atty. (argued and briefed), Ernest W. Williams, U.S. Atty., Nashville, TN, for U.S.

Gary Lamont Odom, pro se.

Lionel R. Barrett, Jr. (Argued and Briefed), Nashville, TN, for Gary Lamont Odom.

Christine A. Freeman (argued and briefed), Nashville, TN, for Leonard Johnson.

R. Steven Whalen (argued), Detroit, MI, for Terrance Bulger.

Terrance Bulger, pro se.

Before: KEITH and RYAN, Circuit Judges; and JOINER, Senior District Judge.**

JOINER, Senior District Judge.

Defendants Gary Odom, Leonard Johnson and Terrance Bulger, appeal their convictions and sentences for cocaine distribution and firearm offenses, challenging the admission of a co-conspirator's grand jury testimony, allegedly prejudicial comments by the trial judge, numerous evidentiary rulings, the denial of Johnson's motion for severance, the sufficiency of the evidence in support of the convictions, and the court's findings in calculating defendants' offense levels under the sentencing guidelines. In addition, Odom appeals his conviction for an independent firearm offense. For the reasons stated, we affirm all defendants' convictions and the sentences of Johnson and Odom. We vacate Bulger's sentence and remand for resentencing.

## I.

### Arrests

On November 2, 1991, Memphis law enforcement officers executed a search warrant at a local motel, finding five men in possession of 995 grams of cocaine and four firearms. The occupants of the room, Leonard Johnson, Myron Johnson, Channce Allen, Gilbert Smith and Carl Warner, were arrested. Myron Johnson agreed to assist the police, telling them that he knew where two and one-half kilograms of cocaine were stored. He led the police to Allen's apartment in Nashville, where the officers found Todd Hoffman and 2385 grams of cocaine, a .30 caliber pistol and a triple beam scale.

### Hoffman's Grand Jury Testimony

Hoffman initially cooperated with the police, and agreed to testify before the grand jury. He testified that Bulger was his cousin, and lived in Detroit, and that Bulger had introduced him to Odom. According to Hoff-

man, Bulger was contacted by a person identified as "G," who had large quantities of cocaine to distribute. Odom told Bulger that the Tennessee area was wide open for cocaine. Hoffman described the sales hierarchy which evolved, stating that "G" was at the top, followed by Bulger, Warner, Hoffman, and then a number of others who provided protection and transportation.

Hoffman further testified before the grand jury that Bulger arranged Hoffman's acquisition of ten kilograms of cocaine which Hoffman then brought to Nashville from Detroit in June 1990. That cocaine was divided among Odom and two other persons. Hoffman estimated that between June and November 1990 he and his group made six trips to Tennessee, transporting approximately 50 kilograms of cocaine. Bulger and Warner were involved in all of the trips. Hoffman testified Odom had given him the gun that he had in his possession when he was arrested, and that he was guarding the cocaine in Allen's apartment at Warner's request.[1]

### Indictment

The grand jury returned an indictment charging defendants and Allen, Smith and George Rider (a/k/a "G") with conspiracy to distribute cocaine (count 1, 21 U.S.C. §§ 841, 846); defendants and Rider, Smith and Allen with the carrying or use of a firearm during and in relation to a drug trafficking offense, based on the gun seized from Allen's apartment (count 2, 18 U.S.C. § 924(c) and 18 U.S.C. § 2); and Leonard Johnson, Smith and Allen with possession of cocaine with intent to distribute, based upon the 2385 grams of cocaine seized from Allen's apartment (count 3, 21 U.S.C. § 841 and 18 U.S.C. § 2).

### Hoffman's Recantation

Hoffman was later incarcerated with Bulger and Odom, and during this time signed a statement that his grand jury testimony was false. The statement was typed by Odom's girlfriend and then supplied to Odom. A recantation hearing was held prior to trial, at

---

** The Honorable Charles W. Joiner, United States District Court for the Eastern District of Michigan, sitting by designation.

1. Hoffman also testified that after his arrest, he formulated a plan to have Myron Johnson murdered because of his cooperation with the police, but that the plan fell apart when he could not get in touch with Bulger.

which Hoffman maintained that his grand jury testimony concerning Odom and Bulger was false, although he adhered to his testimony regarding Warner's involvement. Following the recantation hearing, the court granted the government's motion to dismiss the indictment against Rider without prejudice, and Allen pled guilty to all of the offenses with which he was charged.

### Trial

The government's witnesses at trial included the police officers involved in the investigation and alleged co-conspirators Hoffman, Myron Johnson and Christopher Williams. During the government's direct examination of Hoffman, the prosecutor asked Hoffman if he had testified before the grand jury, and Hoffman responded that he had testified falsely. The court ultimately admitted Hoffman's grand jury testimony as substantive evidence.

Christopher Williams testified that he supplied apartments, cars and financial services to Warner and Odom to assist in their cocaine distribution. Williams stated that at Odom's request he rented an apartment for Warner, in which Myron Johnson, Leonard Johnson, Bulger and Smith stayed. Williams testified that he delivered cocaine to Odom, that he obtained cocaine from Bulger, and that he delivered money to Bulger in Detroit. Williams testified further that Leonard Johnson was present in August 1990 when Odom delivered $90,000 to Bulger. In September 1990, Warner stored two to five kilograms of cocaine in a safe in Williams' apartment.

Williams testified that Warner paged him on November 1, 1990, and told him to take triple beam scales to a local motel in Nashville. He did so, and saw Warner break down approximately two and one half kilograms of cocaine. Leonard Johnson, Myron Johnson and Allen were also present. Part of this cocaine went to Odom. Williams testified that Warner told him that Warner had brought five kilograms of cocaine to Nashville from Detroit, although Williams calculated the amount was greater.

Myron Johnson also testified for the government, stating that Warner, Smith, and Leonard Johnson made the November trip from Detroit to Nashville in one car, while he and Hoffman made the trip in another car. Before leaving Nashville for Memphis, the men stopped at Allen's apartment, although only Warner and Myron Johnson went into the apartment, while the others waited in the car. Myron Johnson testified that he saw Hoffman at the apartment, as well as the cocaine and the gun Hoffman had in his possession when he was arrested.

The jury convicted Bulger, Odom, and Johnson of conspiracy to distribute cocaine and of the carrying or use of a firearm during and in relation to a drug trafficking offense, as charged in counts 1 and 2 of the indictment. The jury also convicted Johnson of possession of cocaine with intent to distribute as charged in count 3. The jury acquitted Smith on all counts.

### II.

### Hoffman's Grand Jury Testimony

■ All three defendants challenge the admission of Hoffman's grand jury testimony.[2] Defendants argue that Hoffman's testimony constituted hearsay, and was admitted in violation of their Fifth and Sixth Amendment rights to due process and to confront the witnesses against them.

Federal Rule of Evidence 801(c) defines hearsay as an out-of-court statement offered to prove the truth of the matter asserted. Rule 801(d) excepts from this general definition certain categories of statements, specifically providing that a statement is not hearsay if the "declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition[.]" Fed. R.Evid. 801(d)(1)(A). In *United States v. Distler*, 671 F.2d 954, 959 (6th Cir.), *cert. denied*, 454 U.S. 827, 102 S.Ct. 118, 70 L.Ed.2d 102 (1981), this court stated that the

2. Although Hoffman made no inculpatory statements before the grand jury about Johnson, Hoffman's testimony was relevant to the existence of the conspiracy of which Johnson was convicted.

admission, as substantive evidence, of grand jury testimony that meets the requirements of Fed.R.Evid. 801(d)(1)(A) does not run afoul of the Constitution. Thus, if the admission of Hoffman's grand jury testimony met the requirements of Rule 801(d)(1)(A), defendants have no legitimate basis on which to challenge its admission as substantive evidence of their guilt.

There is no question but that Hoffman was present at trial and subject to cross-examination, and that his grand jury testimony was given under oath, subject to the penalty of perjury. Defendants contend that, because the prosecutor did not elicit trial testimony inconsistent with Hoffman's grand jury testimony, the grand jury testimony was inadmissible under Rule 801(d)(1)(A).

During the government's direct examination of Hoffman, the prosecutor asked:

Q. And Mr. Hoffman, did you appear before the grand jury in this matter regarding Terrance Bulger?

A. Yes, I did.

Q. Did you testify before the grand jury?

A. Yes. I falsely testified.

Q. Were you represented by counsel?

A. Yes, I was.

Q. And did you tell the grand jury that Terrance Bulger is the source of cocaine?

A. Yes. I lied to tell the grand jury that.

Q. Did you tell the grand jury that Gary Odom was involved with you in the cocaine business?

A. Yes, sir. Another lie. But I did tell them that.

Q. And did you tell the grand jury that Terrance Bulger became involved in the distribution of cocaine in the summer—

At this point, defense counsel objected on the grounds that the prosecutor was asking Hoffman to repeat "perjured testimony," and because the prosecutor had not laid a foundation for impeachment. The court overruled these objections. Hoffman testified on cross-

examination to facts inconsistent with his grand jury testimony. Hoffman stated that Bulger knew nothing about his drug dealings, and that he had recanted his testimony about Odom because he was destroying Odom's life. At the conclusion of Hoffman's trial testimony, the court admitted as substantive evidence the transcript of Hoffman's grand jury testimony and the transcript of the recantation hearing.

Contrary to defendants' assertions, the admissibility of Hoffman's grand jury testimony does not hinge on whether the prosecutor elicited inconsistent trial testimony. Hoffman testified on cross-examination, prior to the admission of his grand jury testimony, to facts inconsistent with his grand jury testimony. It is immaterial whether the prosecutor or defense counsel elicits the foundation for the testimony, so long as the requirements of Rule 801(d)(1)(A) are satisfied. They were satisfied in this case, and the admission of Hoffman's grand jury testimony as substantive evidence was proper.

■ In addition, when a witness testifies at trial and labels his prior testimony as false, a sufficient inconsistency is shown to permit the admission of prior testimony.[3] The witness twice stated at trial that the grand jury testimony was a lie before it was published to the jury. This is a sufficient inconsistency to satisfy Fed.R.Evid. 801(d)(1)(A). To be sure, the better (and arguably more effective) method is for the proponent of the testimony to elicit a response from the witness that contradicts his prior testimony. In this case, however, this line of questions was unnecessary in light of the witness' immediate statement when asked whether he testified before the grand jury: "Yes. I falsely testified." This laid the required foundation for the admission of the grand jury testimony.

## Allegedly Prejudicial Comments by the Court

Bulger and Johnson challenge comments made by the judge during the trial, claiming that their Fifth and Sixth Amendment rights

---

**3.** See United States v. Williams, 737 F.2d 594, 608 (7th Cir.1984), cert. denied, 470 U.S. 1003, 105 S.Ct. 1354, 84 L.Ed.2d 377 (1985) (holding that inconsistency may be found in evasive answers, silence, a change in position, or a purported change in memory).

were impaired thereby. Our review of the record does not reveal that the court's comments reached "'the extremely high level of interference necessary to justify a new trial.'" *Ralph v. Nagy,* 950 F.2d 326, 330 (6th Cir.1992) (quoting *United States v. DeLuca,* 692 F.2d 1277, 1282 (9th Cir.1982)). Thus, we consider the individual instances of alleged judicial interference to determine if reversible error occurred.

 During Hoffman's cross-examination, Bulger's attorney referred to Hoffman's "perjured" grand jury testimony and the subsequent recantation hearing. At that point, the trial judge interjected that Hoffman had pled guilty before him and had affirmed under oath that his statements before the grand jury were true. No objection was made to the judge's comments. In admitting Hoffman's grand jury testimony, the court told the jury:

> It is up to you to decide what time he was lying and what time he is telling the truth.

> It is obvious he is lying one time or the other. You may disregard it all if you want to. You may believe that he is telling you the truth and lied before the grand jury. You may choose to believe he lied to you today and told the truth before the grand jury. That is up to you to decide.

The next day, in response to defense counsel's stated concern that the court had shown disdain for Hoffman, the judge emphasized to the jury that his comments were not meant to indicate how the jury should decide the case.

> As far as you are concerned, I have absolutely no opinion about how this case should be decided. I will tell you the law on the case and you will apply the law to the facts as you find the facts to be. That is exclusively your province and not mine. I hope you understand that.

Bulger contends that the court erred in removing a fact issue from the jury by telling them that Hoffman was obviously lying at one time or another, arguing that the jury

may have found some way of reconciling Hoffman's two stories. As noted, however, Bulger himself characterized Hoffman's grand jury testimony as "perjury" in front of the jury, and he will not now be heard to object to the court's accurate observation that Hoffman was lying at one time or another. The court correctly left to the jury how much, if any, of Hoffman's testimony was believable.

 We are asked to focus on the court's gratuitous comment that Hoffman had pled guilty and at that time affirmed his grand jury testimony.[4] No defendant interposed an objection to the court's comments, and no defendant requested a clarifying or limiting instruction to specifically address the claims of prejudice now advanced on appeal. We are not persuaded that the court's comments constitute plain error under Fed.R.Crim.P. 52(b), which provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." As the Supreme Court recently instructed, a reviewing court does not have the authority to reverse a conviction on plain error grounds unless the defendant demonstrates that the error affected his substantial rights. Normally, the defendant must make a specific showing of prejudice to satisfy this requirement, meaning that the error must have affected the outcome of the proceedings. *United States v. Olano,* ——— U.S. ———, ———, 113 S.Ct. 1770, 1776–78, 123 L.Ed.2d 508 (1993). Defendants have not made a showing of prejudice, and we will not presume prejudice here. Hoffman candidly testified that he had lied to the grand jury and had lied repeatedly to the investigating officers prior to testifying to the grand jury. Given Hoffman's history, there is no reason to assume that the jury would have concluded that one version of events was more credible because it was affirmed on another occasion. Moreover, the trial judge subsequently and appropriately instructed the jury that his comments were not intended to reflect his opinion on how the case should be decided, and this instruction

4. This evidence was relevant and admissible, had it been offered by the government. *United States*

*v. Christian,* 786 F.2d 203, 214 (6th Cir.1986).

adequately addressed the risk of prejudice which resulted from his comments. In sum, we conclude that the court's comments do not constitute reversible error.

■ Bulger's final argument concerns the court's instruction during Bulger's cross-examination of an FBI agent. Counsel twice asked the agent whether Williams was given *Miranda*[5] warnings during an interrogation, and on the second occasion, the court informed the jury that *Miranda* warnings were not required under the circumstances in which Williams was questioned. Bulger does not claim that the court's instruction was wrong as a matter of law but, rather, that the instruction interfered with his attempt to establish Williams' alleged expectation of leniency, which in turn was relevant to his credibility. We find no error in the court's instruction. The trial court's response was simple and nonaccusatory, and obviously intended to dispel the potential for confusion resulting from counsel's injection of an extraneous issue in the case. *See United States v. John Bernard Indus.*, 589 F.2d 1353, 1360–61 (8th Cir.1979).

### Evidentiary Issues

■ Bulger contends that the court erred in denying him the opportunity to question Williams on re-cross-examination, contending that the government elicited new matters on re-direct. Careful study of Williams' testimony refutes this contention. Williams testified on direct that he had seen Bulger at the apartment Williams had rented in Nashville, and that he had delivered money to Bulger in Detroit and obtained cocaine from Bulger in Detroit. Based on this record, we find no abuse of discretion in the trial court's limitation on re-cross-examination. *Dorsey v. Parke*, 872 F.2d 163, 166–67 (6th Cir.), *cert. denied*, 493 U.S. 831, 110 S.Ct. 103, 107 L.Ed.2d 67 (1989).

■ Johnson raises numerous evidentiary issues. First, he contends that he was prejudiced by the admission of evidence of acts that occurred before his eighteenth birthday on August 30, 1990, and that the trial court erred in failing to give his requested instruction that the jury could not consider any such acts against him. A defendant who enters a conspiracy prior to his eighteenth birthday can be tried as an adult if he continues in the conspiracy after that time. Such a defendant in effect "ratifies" his membership in the conspiracy. *United States v. Maddox*, 944 F.2d 1223, 1233 (6th Cir.) *cert. denied*, —— U.S. ——, 112 S.Ct. 610, 116 L.Ed.2d 633 (1991); —— U.S. ——, 112 S.Ct. 948, 117 L.Ed.2d 117, —— U.S. ——, 112 S.Ct. 2317, 119 L.Ed.2d 236 (1992). While a defendant cannot be held liable for pre-eighteen conduct, "such conduct can, of course, be relevant to put post-eighteen actions in proper context." *Id.* This claim of error has no merit.

■ Johnson further objects to testimony elicited by codefendant Bulger during his cross-examination of an FBI agent. Questioning the government's good faith in proceeding to indictment based upon Hoffman's allegedly perjured grand jury testimony, Bulger's attorney brought up the fact that Hoffman had taken a polygraph test. On redirect, the government was permitted to confirm that a polygraph test had been administered and that the agent continued to speak with Hoffman after the test. No defendant objected to this testimony, and the court cautioned the jury that the reliability and accuracy of polygraph evidence is subject to considerable dispute. No error occurred in the admission of this testimony. This court has refused to impose a *per se* prohibition against polygraph evidence, and the mere mention of the words "polygraph examination" does not entitle a defendant to a new trial. The test is whether the evidence was relevant, and whether its probative value outweighed the risk of unfair prejudice. *United States v. Barger*, 931 F.2d 359, 370 (6th Cir.1991). In this case, the challenged evidence met this standard, particularly in light of the court's cautionary instruction.[6]

---

5. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1965).

6. Bulger also challenged the government's good faith in charging the defendants through questioning the FBI agent about his efforts to corroborate information provided by Williams and Hoffman. The prosecutor was given limited latitude to explore this on re-direct. Johnson claims that the court erred in allowing this testimony.

■ Johnson challenges the trial court's admission of evidence of the activities and statements of Odom, Bulger and Warner which occurred after Johnson's arrest. A tape recording of a conversation between Bulger and Williams was also admitted, concerning Bulger's alleged request for money obtained in a cocaine transaction. Johnson concedes that the court instructed the jury to consider this tape against only Bulger. An " 'unarrested co-conspirator still operating in furtherance of the conspiracy may say and do things which may be introduced against the arrested one if the conspiracy is still in operation.' " *United States v. Ramos*, 861 F.2d 461, 465 (6th Cir.1988), *cert. denied*, 489 U.S. 1071, 109 S.Ct. 1353, 103 L.Ed.2d 820; 490 U.S. 1011, 109 S.Ct. 1653, 104 L.Ed.2d 167 (1989) (quoting *United States v. Wentz*, 456 F.2d 634, 637 (9th Cir.1972)). The record fully supports the inference that the conspiracy was still in operation in the weeks immediately following the arrests in Memphis. We find no error in the admission of this evidence.

■ During Hoffman's trial testimony, the court admitted evidence that Warner had been convicted and that Allen had pled guilty, while cautioning the jury that this was "no evidence whatsoever" of the defendants' guilt or innocence. Evidence of the convictions of Warner and Allen was relevant to the reliability of Hoffman's trial recantation of his testimony against Odom and Bulger, particularly in light of the fact that Hoffman admitted to the grand jury that he had originally lied to the police and told them that Warner had given him the gun with which he was arrested, because at that time the police were unaware of Odom. While this evidence had the potential for prejudice, the court adequately addressed that concern with its limiting instruction.

We have considered the balance of Johnson's claims of evidentiary error and find them without merit.

### Denial of Johnson's Motions for Severance

■ Johnson argues that he was prejudiced by the joinder of his trial with that of Bulger and Odom. Rule 8(b) of the Federal Rules of Criminal Procedure states that "[t]wo or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." There is a preference for joint trials of defendants who are indicted together. *Zafiro v. United States*, ⸺ U.S. ⸺, ⸺, 113 S.Ct. 933, 937, 122 L.Ed.2d 317 (1993). However, if a defendant or the government is prejudiced by joinder, Rule 14 permits the court to grant a severance or "provide whatever other relief justice requires." Fed.R.Crim.P. 14. This rule leaves the determination of risk of prejudice and the remedy that may be necessary to the sound discretion of the trial judge. *Zafiro*, ⸺ U.S. at ⸺, 113 S.Ct. at 939.

■ In *Zafiro*, the Court held that when defendants are properly joined under Rule 8(b), the court should grant a severance only if there is "a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* ⸺ U.S. at ⸺, 113 S.Ct. at 938. Johnson's claims of prejudice do not meet this standard. Moreover, in light of the fact that the jury acquitted co-defendant Gilbert Smith on all counts, it is evident that the jury was able to separate and treat distinctively the evidence relevant to each particular defendant. *United States v. Sivils*, 960 F.2d 587, 594 (6th Cir.), *cert. denied*, ⸺ U.S. ⸺, 113 S.Ct. 130, 121 L.Ed.2d 84 (1992). We find no abuse of discretion in the court's denial of Johnson's motions for severance, and decline to reverse his convictions on this basis.

### Sufficiency of the Evidence

■ In testing the sufficiency of the evidence, a reviewing court must view the evidence and all inferences therefrom in the light most favorable to the government. A conviction will be upheld if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable

---

However, the court instructed the jury that it could consider the testimony only as it reflected on the government's good faith, and not as being proof of the statements themselves.

doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). In order to establish a drug conspiracy, the government must prove that a conspiracy existed, that the accused knew of the conspiracy, and that he knowingly and voluntarily joined it. The government need not show that a defendant participated in all aspects of the conspiracy, and the connection to the conspiracy need only be slight, if there is sufficient evidence to establish that connection beyond a reasonable doubt. *United States v. Barrett,* 933 F.2d 355, 359 (6th Cir.1991). Once a conspiracy is shown to exist, the *Pinkerton* doctrine permits the conviction of one conspirator for the substantive offense of other conspirators committed during and in furtherance of the conspiracy, even if the offense is not an object of the conspiracy. *United States v. Christian,* 942 F.2d 363, 367 (6th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 905, 116 L.Ed.2d 806 (1992) (citing *Pinkerton v. United States,* 328 U.S. 640, 646–47, 66 S.Ct. 1180, 1184, 90 L.Ed. 1489 (1946)).

■ Bulger and Johnson challenge their conspiracy convictions, contending that there was a variance between the conspiracy charged and the conspiracy proved at trial. According to defendants, multiple possible conspiracies existed, and the government failed to prove their participation in the conspiracy charged. We disagree. Count 1 of the indictment charged defendants and Rider, Allen, and Smith with conspiring to distribute cocaine in the Middle District of Tennessee between June and November 1990, and the evidence was sufficient to prove this charge. Hoffman testified to how the distribution conspiracy started and to the quantities brought into Tennessee by their "group" between June and November. Williams testified to the essential services he provided, and to the involvement of Bulger and Johnson in Tennessee. The possibility that multiple conspiracies existed was addressed by the court's multiple conspiracy instruction, the accuracy of which is not challenged by defendants. Moreover, in determining whether the evidence showed a single conspiracy or multiple conspiracies, it must be remembered that in a drug "chain conspiracy" such as the one at issue, "it is enough that each member of the conspiracy realizes that he is participating in a joint enterprise, even if he does not know the identities of many of the participants." *United States v. Paulino,* 935 F.2d 739, 748 (6th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 315, 323, 116 L.Ed.2d 257, 112 S.Ct. 660, 116 L.Ed.2d 751 (1991); —— U.S. ——, 112 S.Ct. 883, 116 L.Ed.2d 787 (1992). *Accord, United States v. Lee,* 991 F.2d 343, 349 (6th Cir.1993). Based on these principles, we affirm the conspiracy convictions of Bulger and Johnson.

■ These two defendants also challenge their count 2 convictions for possession of a firearm during and in relation to a drug trafficking offense under 18 U.S.C. § 924(c). We are not persuaded that Johnson's alleged minimal role in the conspiracy, or that Bulger's alleged ignorance of the existence of the firearm charged in count 2, provide a basis on which to reverse their convictions. The nexus between drugs and firearms has been acknowledged when large quantities of cocaine are involved in a conspiracy. *Christian,* 942 F.2d at 368. *Pinkerton* liability for a substantive offense may be imposed if the offense was reasonably foreseeable as a necessary or natural consequence of the unlawful agreement. *United States v. Pinkerton,* 328 U.S. 640, 648, 66 S.Ct. 1180, 1184, 90 L.Ed. 1489 (1946). We agree with the court's observation in *United States v. Diaz,* 864 F.2d 544, 549 (7th Cir.1988), *cert. denied,* 490 U.S. 1070, 109 S.Ct. 2075, 104 L.Ed.2d 639 (1989), that "the illegal drug industry is ... a dangerous, violent business. When an individual conspires to take part in a street transaction involving a kilogram of cocaine worth $39,000, it certainly is quite reasonable to assume that a weapon of some kind would be carried."

■ Finally, Johnson challenges his count 3 conviction under 18 U.S.C. § 841 and 18 U.S.C. § 2 for possession of cocaine with intent to distribute, based upon the cocaine seized from Allen's apartment. Constructive possession is shown when the defendant knowingly had the power and intention at a given time to exercise dominion and control over an object, either directly or through others. *United States v. Reeves,* 794 F.2d

960

1101, 1105 (6th Cir.), *cert. denied,* 479 U.S. 963, 107 S.Ct. 463, 93 L.Ed.2d 408 (1986). Aiding and abetting liability under 18 U.S.C. § 2 is proper when the defendant associates himself with a venture in a manner "whereby he participates in it as something that he wishes to bring about and seeks by his acts to make succeed." *United States v. Martin,* 920 F.2d 345, 348 (6th Cir.1990), *cert. denied,* ____ U.S. ____, 111 S.Ct. 2038, 114 L.Ed.2d 122 (1991). The evidence supports the conclusion that Johnson constructively possessed the five kilograms of cocaine brought to Nashville from Detroit, part of which was broken down and distributed at a Nashville motel, part of which was stored at Allen's apartment, and part of which was then transported to Memphis. We therefore affirm Johnson's conviction.

## Sentencing Issues

### Amount of Cocaine

 The district court found all three defendants responsible for 5 to 15 kilograms of cocaine under U.S.S.G. § 1B1.3,[7] concluding that defendants either were a party to or were aware of distributions in at least this amount. This finding resulted in a base offense level of 32 for each defendant. A district court's findings of fact on the amount of cocaine for which a defendant is to be held accountable must be supported by a preponderance of the evidence, and will be accepted by this court unless clearly erroneous. *United States v. Walton,* 908 F.2d 1289, 1300–1301 (6th Cir.), *cert. denied,* 498 U.S. 906, 111 S.Ct. 273, 112 L.Ed.2d 229, 498 U.S. 989, 990, 111 S.Ct. 530, 112 L.Ed.2d 541 (1990). We have carefully examined the record, and conclude that the district court's findings are supported therein. Williams testified that Warner told him that five kilograms of cocaine were brought into Tennessee in early November, although Williams personally concluded that more was involved in that ship-

ment. Williams also testified that on another occasion he saw Warner break down a kilogram of cocaine when Johnson was present. These amounts exceed the five kilogram figure found by the trial court. The record further supports a conclusion that defendants, Bulger and Odom in particular, were personally involved in distributions of amounts of cocaine far greater than five kilograms. The evidence supports the conclusion that defendants properly are held accountable for 5 to 15 kilograms of cocaine, this being the amount which was reasonably foreseeable to them and in furtherance of the criminal activity they agreed to undertake. U.S.S.G. § 1B1.3, comment. (n. 1) (1991).

### Four–Point Leadership Enhancement

 The district court enhanced Bulger's base offense level under U.S.S.G. § 3B1.1(a) (1991), which provides that if the defendant "was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive," the base offense level should be increased by four levels. There are numerous factors which the court is to consider in determining whether a leadership enhancement is appropriate, including the defendant's decision-making authority, the nature of his participation in the offense, and his recruitment of accomplices. U.S.S.G. § 3B1.1, comment. (n. 3).

When determining whether a defendant's base offense level should be enhanced due to his alleged leadership role in the offense, it is essential that the court make findings regarding the factors mentioned in the guidelines and state its reasons for its determination.[8] In this case, the record shows only that Bulger was a highly placed middleman between the supplier and distributors in Tennessee. The court made no findings regarding the factors relevant to the leadership enhancement, and set forth no reasons for its

7. Section 1B1.3 requires that a defendant's base offense level be determined with reference to "relevant conduct," which is defined to include conduct of others "in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant." U.S.S.G. § 1B1.3, comment. (n. 1) (1991).

8. *See United States v. Range,* 982 F.2d 196, 198 (6th Cir.1992), *cert. denied,* ____ U.S. ____, 113 S.Ct. 3042, 125 L.Ed.2d 728 (1993) (holding that trial court should set forth precise reasons for its decision to impose the obstruction of justice enhancement).

conclusion that the enhancement should be imposed. This is not enough to review. We remand as to Bulger on this issue, and state that we do not express an opinion on the ultimate resolution of this issue.

### III.

In case No. 92–5827, Odom appeals his firearm conviction under 18 U.S.C. §§ 922(g)(1) and 924(a)(2), which proscribe the unlawful and knowing possession of a firearm in or affecting commerce. That offense was based on Odom's possession of a 9mm gun in August 1991, and was charged and tried separately from the offenses discussed above. On appeal, Odom argues that the district court improperly denied his motion for judgment of acquittal and inadequately charged the jury regarding the knowledge element of the offenses.

The evidence was sufficient for the jury to find the essential elements of the offense charged. When Odom was stopped, he told the police officer he had a gun in the car, directing the officer to a black leather bag containing the gun and an airline ticket in Odom's name. The jury instruction required the jury to determine that Odom possessed the firearm knowingly, meaning voluntarily and intentionally, and not because of mistake or accident. This instruction, whether viewed in isolation or in combination with the constructive possession instruction, left no room for the jury to be confused regarding the knowledge element of the offenses. The firearm was not manufactured in Tennessee, and therefore had travelled in interstate commerce. Odom stipulated at trial that he had been convicted of a felony in 1982. We find no error in the district court's denial of Odom's motion for acquittal or in the jury instructions, and therefore **AFFIRM** his conviction in case No. 92–5827.

For the reasons stated, we **AFFIRM** the convictions of all defendants, and the sentences of defendants Odom and Johnson. We **VACATE** Bulger's sentence and **REMAND** for a hearing on the imposition of the leadership enhancement.

KEITH, Circuit Judge, concurring in part and dissenting in part.

I concur in the majority's decision affirming Appellant Odom's firearm conviction pursuant to 18 U.S.C. §§ 922(g)(1) and 924(a)(2) and Appellant Johnson's conviction for possession of cocaine in violation of 18 U.S.C. §§ 841 and 2. I similarly concur in the majority's decision to vacate Bulger's sentence and remand for resentencing.

I disagree, however, with the majority's conclusions regarding Hoffman's grand jury testimony. Because this testimony impacts the conspiracy convictions, and the related firearms convictions of all Appellants, I respectfully dissent from the portion of the opinion affirming the conspiracy convictions.

On January 7, 1992, the court held a hearing at which Todd Hoffman testified that his previous statements before the grand jury implicating Appellants Bulger and Odom were lies. The majority found Hoffman's testimony at trial sufficiently inconsistent with his grand jury testimony to lay the required foundation for the admission of the grand jury testimony. I disagree because no inconsistencies were elicited until after the introduction of the grand jury testimony. Hoffman's only inconsistent response consisted of a response to a question about his grand jury testimony. Only after a question which introduced his earlier testimony did Hoffman "contradict" the prior testimony by stating he had lied. The prosecutor, by directly asking Hoffman about his testimony, introduced the grand jury testimony before any inconsistencies and thus before he laid a proper foundation.

Under Rule 801(d)(1)(A), a prior statement by a witness is not hearsay if the declarant after testifying at trial, subject to cross-examination, contradicts or gives testimony inconsistent with such prior statement. Additionally, the prior statement must have been given under oath and subject to the penalty of perjury at a trial, hearing, deposition or other proceeding. In the instant case, a review of the prosecutor's examination of Hoffman reveals that Hoffman made no statements at trial that contradicted his earlier statements before the grand jury. The government did not ask Hoffman any sub-

stantive questions which elicited responses inconsistent with his grand jury testimony. Instead, the prosecutor failed to lay a proper foundation, and began questioning Hoffman on his grand jury testimony before eliciting any trial testimony from Hoffman that was *inconsistent* with that grand jury testimony.

The majority states:

Contrary to defendants' assertions, the admissibility of Hoffman's grand jury testimony does not hinge on whether the prosecutor elicited inconsistent trial testimony. Hoffman testified on cross-examination, prior to the admission of his grand jury testimony, to facts inconsistent with his grand jury testimony. It is immaterial whether the prosecutor or defense counsel elicits the foundation for the testimony, so long as the requirements of Rule 801(d)(1)(A) are satisfied. They were satisfied in this case, and the admission of Hoffman's grand jury testimony as substantive evidence was proper.

I disagree with the majority's assertion that Hoffman's statement of "Yes. I falsely testified," labeling his prior testimony as false, established a sufficient inconsistency to permit admission under Rule 801(d)(1)(A). Hoffman's statement was not a proper substitute for a true response from the witness *contradicting* his prior testimony. Thus, under Rule 801, Hoffman's grand jury testimony constituted inadmissible hearsay.

The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution to be confronted with the witnesses against him. "[T]he main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." *Davis v. Alaska,* 415 U.S. 308, 315–16, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974) (quoting 5 J. Wigmore, Evidence ¶ 1395, p. 123 (3d ed. 1940)).

The Supreme Court "has consistently concluded that the uncross-examined testimony of an alleged co-conspirator is not sufficiently reliable to meet the requirement of the Confrontation Clause." *United States v. Gomez–Lemos,* 939 F.2d 326, 332 (6th Cir.1991) (citing *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968)). The Court has reasoned that a co-conspirator has a "strong motivation to implicate the defendant and to exonerate himself," and therefore, a co-conspirator's statements concerning the defendant should be viewed suspiciously. *Lee v. Illinois,* 476 U.S. 530, 541, 106 S.Ct. 2056, 2062, 90 L.Ed.2d 514 (1986) (quoting *Bruton v. United States,* 391 U.S. at 391, 88 S.Ct. at 1686 (White, J., dissenting) (citations omitted)). Because Hoffman's testimony was before a grand jury, the Appellants did not have an opportunity to cross-examine him.[1] As an alleged co-conspirator in a drug distribution ring, Hoffman had ample reason to blame the Appellants in an effort to vindicate himself. The suspicious nature of his statements is evidenced by the fact that he recanted them at a later proceeding.

Clearly, the admission of Hoffman's grand jury testimony allowed an error of a constitutional dimension to occur at the Appellants' trial. Further, in this case the admission of Hoffman's testimony was not harmless error. The testimony was crucial to the government's proof of the conspiracy, directly implicating the Appellants as co-conspirators. The conspiracy convictions rest upon improperly admitted hearsay therefore, they should be reversed. Because I believe the conspiracy convictions must be reversed, the firearm convictions in connection with the conspiracy must also be reversed.[2]

1. Although Appellant Leonard Johnson, unlike Appellants Bulger and Odom, was not mentioned by name in Hoffman's grand jury testimony, this evidence was still crucial to the government's proof of the conspiracy, of which all Appellants were convicted.

2. Appellants were convicted for use of a firearm in connection with the conspiracy, under *Pinkerton v. United States,* 328 U.S. 640, 646–47, 66 S.Ct. 1180, 1184, 90 L.Ed. 1489 (1946). Under the *Pinkerton* doctrine, a defendant can be found guilty of the substantive offenses of his co-con-

spirators provided the offenses were committed during and in furtherance of the conspiracy.