**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Leevern JOHNSON, a/k/a Antonio Binion, Defendant-Appellant.**

No. 03–5698.

United States Court of Appeals, Sixth Circuit.

Sept. 2, 2004.

Jerry R. Kitchen, Asst. U.S. Attorney, U.S. Attorney's Office, Jackson, TN, for Plaintiff–Appellee.

David W. Camp, Pettigrew & Camp, Jackson, TN, for Defendant–Appellant.

Before: KEITH, MARTIN, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge.

Police apprehended Leevern Johnson, the defendant/appellant, in February 2002 while he fled the scene of a bank robbery. Johnson was indicted for this robbery as well as for a robbery committed in December 2001. Johnson pled guilty to the February 2002 robbery. At his trial for the December 2001 robbery, witnesses identified a black revolver seized from Johnson in February 2002 as the gun used in the December 2001 robbery, and defense counsel impeached this testimony with a surveillance photograph, taken during the December 2001 robbery, that showed Johnson holding a gun with a silver appearance. In response, the Government introduced a photograph in which the gun seized from Johnson in February 2002 looked silver, in order to demonstrate that the appearance of the gun varied depending on the lighting.

A jury convicted Johnson of the December 2001 robbery. On appeal, Johnson argues that (1) the district court abused its discretion in admitting the surveillance photograph because it was taken under conditions different from those at the scene of the December 2001 robbery and those in the courtroom and, hence, its prejudicial effect outweighed its probative value, and (2) the Government did not present sufficient evidence to sustain his convictions. For the following reasons, we affirm the judgment of the district court.

## BACKGROUND

On December 6, 2001, an armed man robbed the American Savings Credit Union (the "Credit Union") in Jackson, Tennessee. On February 28, 2002, Johnson robbed the First Bank in Jackson, Tennessee. Johnson was apprehended while fleeing from the First Bank. Johnson later confessed to the First Bank robbery.

A grand jury returned a four-count indictment charging Johnson with (1) armed bank robbery in violation of 18 U.S.C. § 2113(a) & (d) for the First Bank robbery, (2) brandishing a firearm during a crime of violence in violation of 18 U.S.C. § 924(c) for the First Bank robbery, (3) armed bank robbery in violation of 18 U.S.C. § 2113(a) & (d) for the Credit Union robbery, and (4) brandishing a firearm during a crime of violence in violation of 18 U.S.C. § 924(c) for the Credit Union robbery. Johnson pled guilty to Counts 1 and 2.

The Government notified Johnson that it intended to introduce evidence of his involvement in the First Bank robbery at his trial on Counts 3 and 4, which involved the Credit Union robbery. The Government asserted that the First Bank robbery was a "signature crime" and that evidence of this crime was admissible under Federal Rule of Evidence 404(b) to establish Johnson's identity as the perpetrator of the Credit Union robbery. At trial, the district court denied the Government's motion to present evidence concerning the First Bank robbery. The court concluded that, although the First Bank robbery was similar enough to the Credit Union robbery to constitute a "signature crime," the prejudicial effect of evidence concerning the First Bank robbery outweighed its probative value.

At trial, three Credit Union employees who witnessed the robbery identified Johnson as the robber. Additionally, the employees identified a black revolver, which was recovered from Johnson when he was apprehended while fleeing the scene of the First Bank robbery, as the gun used in the Credit Union robbery.

On cross-examination, defense counsel impeached the employees' testimony concerning the gun. Deborah Puckett conceded that, when initially interviewed by the police, she described the gun used by Johnson during the Credit Union robbery as "silver," and that the gun she identified as Johnson's on direct was not silver. Both Julie Birl and Katrina Baker allowed that, while the gun they identified as Johnson's on direct was black, a photograph taken during the robbery showed Johnson holding a gun that appeared silver.

To rehabilitate the employees, the Government proffered another photograph, taken of the interior of Johnson's getaway car following his capture, which showed the gun used by Johnson during the First Bank robbery. According to Johnson, the photograph also depicted money on the front seat of the car and a deployed airbag. In the photograph, the gun looked silver, and the Government claimed that the photograph demonstrated that the appearance of the gun varies depending on the lighting conditions. Johnson objected to the introduction of the photograph, arguing that (1) it was not relevant because the lighting conditions at the time of the photograph differed from those in the Credit Union at the time of the robbery and from those inside the courtroom, and (2) he could not respond to the Government's argument concerning the photograph without broaching the First Bank robbery. The district court overruled Johnson's objection, concluding that "[s]ince the color of this weapon has become a very important issue, the picture does tend to be some evidence that the gun appears silver under certain circumstances." The court instructed the

Government to avoid any discussion of the First Bank robbery when introducing the photograph.

The Government introduced the photograph through the testimony of Cathy Ferguson, a police officer. Ferguson testified as follows:

Q: Ms. Ferguson, I was asking you a question in regards to when this gun was recovered on February 28th from the defendant. Was a photograph taken of this gun?

A: Yes.

Q: Let me pass to you this and ask you if you recognize it.

A: Yes, I do.

Q: Is that this gun?

A: Yes, it is.

MR. KITCHEN: Your Honor, could I have that marked as exhibit number 22?

THE COURT: Yes, sir, that's admitted.

MR. KITCHEN: I'm sorry Your Honor, I—

Q: It looks silver there, doesn't it?

A: Yes, sir.

MR. CAMP: Objection, leading.

THE COURT: Yes, sir, leading. Sustained.

BY MR. KITCHEN:

Q: What color does it look like? Does it look like it does right here under these lighting conditions?

A: No, it does not.

On cross-examination, Ferguson conceded that the photograph was not taken "at the same time and the same location and the same lighting or under the same conditions at the time that the bank was robbed at the credit union."

At the close of the Government's case-in-chief, Johnson moved for a judgment of acquittal. The district court denied John-son's motion, and a jury found Johnson guilty. Johnson timely appealed.

## ANALYSIS

*1. Admission of the Photograph*

■ The district court did not abuse its discretion in admitting the photograph. This court reviews any evidentiary ruling by a district court for abuse of discretion. *United States v. Price*, 329 F.3d 903, 905 (6th Cir.2003). "In reviewing the trial court's decision for an abuse of discretion, the appellate court must view the evidence in the light most favorable to its proponent, giving the evidence its maximum reasonable probative value and its minimum reasonable prejudicial value." *United States v. Cope*, 312 F.3d 757, 775 (6th Cir.2002) (quoting *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 587 (6th Cir.1994)). "Moreover, even if the trial court abuses its discretion, a new trial is not required unless 'substantial rights' of a party are affected." *Id.*

As defined by the Federal Rules of Evidence, relevant evidence "means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. All relevant evidence is admissible. Fed.R.Evid. 402. However, Rule 403 provides, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403. "A district court is granted 'very broad' discretion in determining whether the danger of undue prejudice outweighs the probative value of the evidence." *United States v. Mack*, 258 F.3d 548, 555 (6th Cir.2001) (quoting *United States v. Vance*,

871 F.2d 572, 576 (6th Cir.1989)). "If judicial self-restraint is ever desirable, it is when a Rule 403 analysis is reviewed by an appellate tribunal." *United States v. Thomas,* 49 F.3d 253, 258 (6th Cir.1995) (quoting *United States v. Zipkin,* 729 F.2d 384, 389–90 (6th Cir.1984)).

Johnson contends that the district court should have excluded the photograph pursuant to Rule 403. He notes that the photograph was taken under conditions different from those in the Credit Union at the time of the robbery and from those in the courtroom, and that the photograph depicted, along with the gun, money and a deployed airbag. He also argues that the court's ruling admitting the photograph "contradicted" its ruling excluding evidence concerning the First Bank robbery.

Johnson's argument is without merit. As the district court concluded, the color of the gun became an issue during defense counsel's cross-examination of the employees, and the photograph was relevant to this issue in that it showed that, under certain conditions, the gun appears silver. There was little, if any, danger of unfair prejudice, as the jury was made aware that the photograph was taken under conditions different from those in the Credit Union and in the courtroom, and as the parties made no mention of the First Bank robbery. In sum, the district court did not abuse its discretion in admitting the photograph.

### 2. *Sufficiency of the Evidence*

██ The Government adduced sufficient evidence for a reasonable jury to convict Johnson of the Credit Union robbery. In a challenge to the sufficiency of the evidence, this court asks "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Brown,* 332 F.3d 363, 372 (6th Cir.2003) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). In pursuing this inquiry, the court "must view the evidence and all inferences therefrom in the light most favorable to the government." *United States v. Odom,* 13 F.3d 949, 958 (6th Cir.1994).

At trial, three employees of the Credit Union, who witnessed the robbery, testified that they had selected Johnson from a photo line-up, and each made an in-court identification of Johnson as the robber.[1] An inmate who shared a jail pod with Johnson testified that he overheard Johnson confess to the robbery. This evidence permits a reasonable trier of fact to find Johnson guilty of Counts 3 and 4, as even the uncorroborated testimony of a single witness is a sufficient basis for a federal conviction. *United States v. Hoskins,* 628 F.2d 295, 296 (5th Cir.1980).

Johnson challenges the sufficiency of the evidence by pointing out that the Government was unable to present fingerprint evidence and that, even though the perpetrator wore glasses, none of the individuals pictured in the photo line-up had on glasses. Patently, these quibbles do not suffice to remove the case from the jury.

### CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.

---

1. The district court observed that "this case has probably as strong an eyewitness testimony as I've ever seen. In fact, I don't remember ever seeing a case in which I had three witnesses who were so unequivocal in their testimony. They were as strong eyewitnesses as I've ever seen on the issue of identity."