## UNITED STATES of America

v.

William Oscar **HARRIS,** a/k/a "Oscaro El Hari, Bey," Reginald David Lundy, a/k/a "Noble R. Dauud Lundi El, Bey," Reginald M. Wooten, a/k/a "Noble R. Asanti, Ali," Arthur T. Outterbridge, a/k/a "Arthor Tomas Ottobrice, Bey," Robert McCurdy, a/k/a "Al Ruberto Moor Core, Dey," Patri-

plaintiff was referred by the treating physician").

cia A. Crisp, a/k/a "Patria Ahna Cristos, Ali," Crystal V. Wooten, a/k/a "Kris'taal, Ali," a/k/a "Kristin Young," Lisa A. Brown, a/k/a "El Iysah," and Cesi Aquia El Binyamiyn, Bey, Defendants.

Criminal No. 03–354–04 (JBS).

United States District Court,
D. New Jersey.

May 13, 2004.

Christopher J. Christie, United States Attorney by Robert Stephen Stigall, Lee

D. Rudy, Assistant United States Attorneys, United States Attorney's Office, Camden, NJ, for United States of America.

Rocco C. Cipparone, Jr., Esquire, Haddon Heights, NJ, for defendant Arthur T. Outterbridge, a/k/a "Arthor Tomas Ottobrice, Bey".

### OPINION ADDRESSING REQUEST OF DEFENDANT OUTTERBRIDGE TO PROCEED PRO SE

SIMANDLE, District Judge.

This matter is before the Court upon the renewed request of defendant Arthur T. Outterbridge, a/k/a "Arthor Tomas Ottobrice, Bey," to fire his court-appointed counsel, Rocco C. Cipparone, Jr. Esquire, and "speak for himself." Defendant Outterbridge has previously sought to fire his attorney on several occasions, but his requests have been denied because he has refused to waive his Sixth Amendment right to counsel, the necessary precursor to any *pro se* appearance by a criminal defendant. After the present request, though, at an April 23, 2004 hearing conducted pursuant to *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), defendant Outterbridge stated that he would waive his right to counsel so that he could "speak for himself" at trial.

Defendant's apparent clarity on the issue of waiver at the April 23, 2004 hearing, though, is clouded by his misconduct during the past eleven months of this case, which continues to date, a factor which must be considered by the Court prior to accepting a waiver of the right to counsel. The Third Circuit has made clear that "waiver of the right to counsel 'depends in each case upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.'" *Buhl v. Cooksey,*

233 F.3d 783, 790 (3d Cir.2000) (quoting *Edwards v. Arizona*, 451 U.S. 477, 482, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981)). If, after a full consideration of all facets of the case and an inquiry into the defendant's reasons for his request to proceed *pro se*, the Court determines that the defendant's request is "disingenuous and designed solely to manipulate the judicial process and to delay the trial," as "opposed to a genuine attempt (no matter how ill-advised) to conduct one's own defense," the Court must find that he has not "actually tender[ed] a knowing, voluntary and intelligent waiver of counsel, and has not unequivocally asserted the constitutional right to conduct his own defense." *Buhl*, 233 F.3d at 797–99.

The Court has considered the unique facts of this case and the defendant's responses at the April 23, 2004 *Faretta* hearing, as well as the August 8, 2003 *Faretta* hearing, and finds, for the reasons explained herein, that defendant Outterbridge not effectuated a valid waiver of his right to counsel. He has instead requested to proceed *pro se* with the intent to further disrupt and delay the proceedings of this Court. Therefore, he has not intelligently, unequivocally, and voluntarily waived his right to counsel, and the Court will deny his request to proceed *pro se*. He will continue to be represented by his present counsel, Rocco C. Cipparone, Jr., Esquire.[1]

## I. BACKGROUND

Defendant Arthur T. Outterbridge, a/k/a "Arthor Tomas Ottobrice, Bey," (hereinafter "Outterbridge") is one of nine defendants in a criminal case pending before this Court which charges the defendants in a twenty-five count Indictment with conspiracy to produce and pass false and fictitious money orders and with passing false and fictitious money orders in violation of federal law. Defendant Outterbridge's conduct throughout the eleven-month pendency of this case has established that he does not believe that he is subject to the criminal jurisdiction of this Court and that he believes himself to be free to obstruct and manipulate its proceedings if at all possible, using means which include making continuous threats of harm to those who are involved in this case. His misbehavior has been described at length in several prior opinions of the Court, *see, e.g. United States v. Harris*, Crim. No. 03–354(JBS), Opinion, (D.N.J. Aug. 14, 2003); *id.*, Opinion Regarding Jurisdiction, (D.N.J. Aug. 15, 2003); *id.*, Opinion Regarding Restrictions on Filing and Other Communications (D.N.J. Aug. 27, 2003); *id.*, Opinion Finding … Arthur T. Outterbridge [and others] in Civil Contempt of Court, (D.N.J. April 22, 2004); *id.*, Opinion Regarding Severance, (D.N.J. April 30, 2004), and will be discussed herein as it applies to the present motion.

## II. DISCUSSION

### A. Legal Standard

In an August 14, 2003 Opinion, the Court explained the "tension between the right to have counsel and the right to represent oneself." *United States v. Peppers*, 302 F.3d 120, 130–31 (3d Cir.2002). Both rights are protected by the Sixth Amendment,[2] *Faretta v. California*, 422

---

1. In a separate Opinion, the Court will consider ethical issues that Mr. Cipparone and other counsel have raised in this matter relating to their continued representation of the defendants in light of Mr. Outterbridge's, and other defendants', threats to sue counsel and participation as plaintiffs in a civil suit against all judicial officers, prosecutors and defense counsel in this case.

2. The Sixth Amendment, provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right … to have Assistance of Counsel for his defense."

U.S. 806, 806–07, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), but the right to counsel is "the paramount right vis a vis the right to self-representation," *Buhl v. Cooksey*, 233 F.3d 783, 790 n. 8 (3d Cir.2000). Therefore, because a defendant "cannot secure the right to proceed *pro se* without sacrificing the right to counsel," the court must "make a thorough inquiry and take all steps necessary to insure the fullest protection" of the right to counsel, and must "indulge every reasonable presumption against a waiver of counsel." *Buhl*, 233 F.3d at 790 (quoting *Von Moltke v. Gillies*, 332 U.S. 708, 722, 68 S.Ct. 316, 92 L.Ed. 309 (1948); *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)).

■ The defendant does not need to recite a specific "script" for the Court to find that he has effectively waived his right to counsel, *see Iowa v. Tovar*, —— U.S. ——, —— – ——, 124 S.Ct. 1379, 1389–90, 158 L.Ed.2d 209 (2004), but the defendant is required to "overcome the presumption against a waiver of counsel" by "clearly and unequivocally" indicating that he seeks to proceed *pro se* and that his waiver of the right to be represented by counsel is "voluntary, knowing and intelligent," *Peppers*, 302 F.3d at 129; *United States v. Stubbs*, 281 F.3d 109, 116–17 (3d Cir.2002). Moreover, his effort at self-representation may be denied when it is motivated by the intent to obstruct the tribunal itself. *Buhl*, 233 F.3d at 797–99.

When a defendant seeks to proceed *pro se*, the trial court must conduct a "sufficiently penetrating inquiry to satisfy itself that the defendant's waiver of counsel is knowing and understanding as well as vol-

untary" in light of the facts and circumstances of the case. *Peppers*, 302 F.3d at 130–31; *Buhl*, 233 F.3d at 790. The Court must be satisfied that the defendant understands the nature of the charges and the disadvantages of self-representation,[3] and must also be convinced that the defendant's motives for the request are appropriate. *Buhl*, 233 F.3d at 798. "Inquiry into a defendant's motives is necessary and appropriate because it helps the trial court determine if the purported waiver of counsel is voluntary, knowing and intelligent." *Id.* A defendant who "intends nothing more than disruption and delay is not actually tendering a knowing, voluntary and intelligent waiver of counsel" because his decision is not grounded in an understanding of the implications of a waiver, but is instead centered around his manipulative intent. *Id.* at 797. The right of self-representation, though, is "not a license to disrupt" the court; indeed, if the "defendant's requests are disingenuous and designed solely to manipulate the judicial process and to delay the trial, ... such tactics by an accused cannot be allowed to succeed." *Id.* at 799.

The trial court, therefore, must conduct a probing inquiry into the defendant's request, and cannot "merely accept the defendant's statement ... that he is informed of his right to counsel and desires to waive this right." *Id.* at 799. The Court must consider the "particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused," to determine if "the defendant is attempting to disrupt the administration of justice" with his request to proceed *pro se*, or is providing a know-

---

**3.** Prior to effectuating a valid waiver, a defendant must (1) assert his wish to proceed *pro se* clearly and unequivocally; (2) understand "the nature of the charges, the range of possible punishments, potential defenses, technical problems that the defendant may encounter, and any other facts important to a general understanding of the risks involved;" (3) be competent to stand trial; and (4) have good cause for the request if it is made on the eve of trial. *See Peppers*, 302 F.3d at 132.

ing, voluntary and intelligent waiver of counsel. *Id.* at 790, 797.

### B. Analysis

 This Court must deny the request of defendant Outterbridge to proceed *pro se* because he has failed to validly waive his Sixth Amendment right to counsel. Although Outterbridge stated with apparent clarity that he wished to waive the right to counsel and "speak for himself" at the April 23, 2004 *Faretta* hearing, his conduct during the past eleven months, and continuing to date, establishes that this April 23rd attempt to proceed *pro se* is the product of his desire to obstruct and delay the administration of justice in this matter and to prevent the Court from presiding over an orderly trial. This is not a valid reason for the Court to allow the defendant to waive the fundamental and paramount right to counsel.

For the past eleven months, defendant Outterbridge has consistently made clear that he not only refuses to acknowledge the authority that this Court has over him, and the statutes conferring jurisdiction and the rules of evidence and criminal procedure, but that he seeks to derail the present proceedings through unlawful means if at all possible. Outterbridge has shown his disrespect for the Court through his behavior during hearings and through his failure to respect the rulings of the Court, which has subjected him to two civil contempt findings. Indeed, defendant Outterbridge presently remains in continuing civil contempt of this Court's Order of August 27, 2003 because he has failed to purge his contempt as provided by the

Court's Order of April 22, 2004. *See United States v. Harris,* Crim. No. 03–354(JBS), Opinion Regarding Restrictions on Filing and Other Communications (D.N.J. Aug. 27, 2003); *id.,* Opinion Finding ... Arthur T. Outterbridge [and others] in Civil Contempt of Court, (D.N.J. April 22, 2004). Outterbridge has also joined four of co-defendants in threatening filings of involuntary bankruptcy against the undersigned trial judge, other judicial officers, and others whose official duties involve them in this criminal case, (*see* "Affidavit of Notice of Default," dated September 10, 2003), threats which have been repeated as recently as April 27, 2004 by co-defendant Lundy, (*see* "Notice and Acceptance of Offer," dated April 27, 2004).[4] The Court finds, after considering the defendant's behavior during the pendency of this case and the defendant's answers during the April 23, 2004 *Faretta* hearing, as well as in the prior *Faretta* hearing, that his present request to proceed *pro se* is just one more effort taken to try to disrupt the Court's administration of justice. As such, it must be denied as it does not establish a voluntary, intelligent, and knowing waiver of the right to counsel.

Defendant Outterbridge has attempted to disrupt the Court during the majority of the hearings held in this matter. When he made his initial appearance before United States Magistrate Judge Joel B. Rosen on May 9, 2003, he mechanically stated that he did not want the Court to make legal determinations concerning him, that he "fired" the Court, and that he did not want to "contract with" the Court. At his de-

---

**4.** This Court has addressed these repeated, baseless and obstructive financial threats on numerous occasions, most recently in the Order Pertaining to Threatened Bankruptcy Filings filed May 10, 2004, amended by Order of May 11, 2004. In that Order, this Court imposed a bar against Outterbridge and others from carrying through upon their threats, which were found to be extortionate. Outterbridge and others have threatened that if they were not released, and the indictment dismissed, and all records expunged, and payments of money made to them, that they would file petitions to place various officers and others in this case into involuntary bankruptcy.

tention hearing on May 13, 2003, defendant Outterbridge again refused to participate in the proceeding, instead stating that he "fired" the Court and that he refused to "consent to these proceedings." At his arraignment on May 21, 2003, defendant Outterbridge stated that he did not wish to contract with the Court. He did answer one question responsively on May 21, 2003; when asked whether he wished to proceed *pro se* based on his assertion that he "fired" his attorney, he stated that he was "capable of representing himself," but that he was "not qualified."

Defendant Outterbridge next appeared before the Court on July 25, 2003 to discuss documents that the Court had received which included the name of defendant Outterbridge, and other defendants in this matter, and sought to require payment of millions of dollars from the Court and from the United States Attorney and his assistants, pursuant to bogus commercial contracts, liens, and security interests Outterbridge and several co-defendants claimed against their property due to their performance of their official duties in this criminal case. Defendant Outterbridge, as well as four other defendants present at the hearing, refused to discuss the documents and their threatening, obstructive nature, instead stating that they did not consent to "contract with" the court and that they had not seen any proof establishing the Court's authority over them.

Defendant Outterbridge next appeared before the Court on August 8, 2003 at his first *Faretta* hearing. Defendant Outterbridge refused to answer the Court's questions, though, and instead repeatedly interrupted the Court, spoke over the undersigned judge, and asked the Court "May I have your name?" "Do you have a claim against me?" and "Do you know anyone who has a claim against me?" Even when the Court attempted to answer defendant Outterbridge's questions, the defendant continued to ignore the Court's responses and questions. He was eventually warned that his refusal to answer the Court's questions could lead to a finding of contempt, but he was unfazed by the warning and continued to interrupt the Court and refuse to responsively answer its questions pertaining to representation by counsel and self-representation. By the end of the hearing, defendant Outterbridge had answered only one question responsively, stating that he had studied the law. For his obstructive August 8, 2003 behavior, he was found in civil contempt of court. *See United States v. Harris,* Crim. No. 03–354(JBS), slip op. (D.N.J. Aug. 14, 2003).

Defendant Outterbridge has since appeared in court on November 12, 2003, March 29, 2004, April 13, 2004, and April 23, 2004. His outward courtroom behavior has improved; as his attorney explained, "[o]n April 23, 2004, Mr. Outterbridge even evidenced positive change for decorum's sake by referring to Your Honor as 'Judge' Simandle compared to his earlier references to 'Mr.' Simandle." (Cipparone Letter to Court, April 30, 2004 at 2.) Even so, Outterbridge has continued to question the Court's authority, stating on April 23, 2004, for example, that he does not consent to going to trial because he has never "consented to anything going on here," and asking the undersigned judge why he is "getting in the middle of a private dispute between two parties to a contract." His conduct in court to date, therefore, continues to manifest his intent to disrupt and obstruct the proceedings by questioning the Court's authority over him.

As defendant's obstructive courtroom behavior has been targeted toward disrupting the Court, his consistent disregard of the Court's rulings has sought to deflect attention from the substance of the matter and delay prosecution. For example, at

every hearing during the past eleven months, including the April 23, 2004 *Faretta* hearing, defendant Outterbridge has asserted that "there is no case here" because "jurisdiction has not been proven" and that this Court cannot proceed because "jurisdiction is not established."

The Court's jurisdiction over this matter and over defendant Outterbridge, though, has been established and has been repeatedly explained to Outterbridge. Indeed, the Court provided defendant Outterbridge, and the other defendants, an opportunity to present all of their jurisdictional arguments for consideration at an August 8, 2003 hearing, and Outterbridge did so, arguing that the Court should dismiss the case notwithstanding his place of birth in Philadelphia, Pennsylvania, and his employment with the United States Postal Service, because he is a sovereign of the Al Moroccan Empire and not a United States citizen, because he acted "upon land not ceded to United States" by the Al Moroccan Empire, because he has not seen evidence that the United States was a "first party witness" or "first party victim" to his actions, because he has not seen proof that the United States, the undersigned judge, the United States Attorney, and others are "not fictions having parody with the real," and because the government is charging a "claim" without an "assessment." The Court considered these arguments and found conclusively, with reasons explained in an accompanying Opinion, that this Court has jurisdiction over this matter. *See United States v. Harris*, Crim. No. 03–354(JBS), Opinion Regarding Jurisdiction, (D.N.J. Aug. 15, 2003). This case involves an Indictment charging defendant Outterbridge and others with violations of federal law occurring within the United States in the District of New Jersey, in violation of the statutes specified in the Indictment. Defendant Outterbridge has never accepted this Court's ruling and has refused to abide by it, even when the Court has taken efforts to repeatedly explain why its jurisdiction over this matter is not subject to debate and has, on numerous occasions, informed Outterbridge that he has preserved his objection to the Court's jurisdiction for purposes of appeal. *See, e.g. United States v. Harris*, Crim. No. 03–354(JBS), Opinion Regarding Restrictions on Filing and Other Communications (D.N.J. Aug. 27, 2003); *id.*, Opinion Finding ... Arthur T. Outterbridge [and others] in Civil Contempt of Court, (D.N.J. April 22, 2004); *id.*, Opinion Regarding Severance, (D.N.J. April 30, 2004). In spite of the Court's efforts, and the self-evident fact that these objections to jurisdiction are all preserved for purposes of appeal, Outterbridge has informed the Court that he will not subject himself to the authority of the Court. Outterbridge continues to make his jurisdictional assertions in an effort to distract the Court and the prosecution and to manipulate the Court into continually reconsidering arguments which have absolutely no legitimate basis. His making of these assertions, though, together with his continuing efforts to develop bogus liens and bankruptcies against the public officials and others involved in this case, eliminates his credibility when he states, as he did on April 23, 2004, that he will comply with Orders of this Court if allowed to proceed *pro se*.

The Court must emphasize that defendant Outterbridge has shown more than a consistent disagreement with this Court's jurisdictional ruling; he has shown a consistent effort to obstruct, delay, and manipulate the Court. It is this obstructiveness that provides the Court with confidence that his request to proceed *pro se* is backed by similarly obstructive motivation. The Court is well-aware that many defendants may disagree with its rulings and yet represent themselves in a criminal matter. Here, though, defendant Outterbridge has not

simply disagreed with the Court's jurisdictional ruling; he has refused to abide by it and has pursued in bad faith, and perhaps with criminal intent, other means intended to obstruct the Court and intimidate those with the duty to assure the orderly administration of justice. The Court has detailed the means he has used in several prior Opinions and Orders in this matter. *See United States v. Harris,* Crim. No. 03–354(JBS), Opinion Regarding Restrictions on Filing and Other Communications (D.N.J. Aug. 27, 2003); *id.,* Opinion Finding ... Arthur T. Outterbridge [and others] in Civil Contempt of Court, (D.N.J. April 22, 2004); *id.,* Opinion Regarding Severance, (D.N.J. April 30, 2004). In essence, defendant Outterbridge has participated, with other defendants, in creating and sending purported contracts and lien claims to judicial officers, prosecutors, and defense counsel involved in this matter which are directed toward their personal property for hundreds of millions of dollars purportedly owed due to actions taken in this matter. (*See, e.g.* Exs. 2–A, 2–B, 2–C, 2–D from 4/13/04 Hearing.) Defendant Outterbridge has also been a participant in filing documents which allege that the undersigned, the prosecutors, and defense counsel are committing felonies and civil torts because of the pendency of this matter and in defacing and returning Opinions and Orders of the Court. *See United States v. Harris,* Crim. No. 03–354(JBS), Opinion Regarding Severance, (D.N.J. April 30, 2004).

The financially-threatening documents were the subject of an April 22, 2004 Opinion and Order issued the day prior to the Court's April 23, 2004 *Faretta* hearing regarding defendant Outterbridge. In the April 22nd Opinion, the Court found that defendant Outterbridge was in civil contempt of this Court's August 27, 2003 Order which restrained him from creating such financially threatening documents, and provided a means for him to purge the contempt. *See United States v. Harris,* Crim. No. 03–354(JBS), Opinion Finding ... Arthur T. Outterbridge [and others] in Civil Contempt of Court, (D.N.J. April 22, 2004). To date, defendant Outterbridge has not purged himself of his civil contempt. Therefore, his assertion on April 23, 2004 that he has changed and will, in the future, abide by this Court's orders and refrain from his obstructive ways, is hardly believable. As noted above, the continuing extortionate demands for dismissal of the case and payment of money, under threat of involuntary bankruptcy, have continued and have been endorsed by Outterbridge, as addressed by this Court's Order of May 10, 2004.

In sum, defendant Outterbridge has maintained a consistent intentionally obstructive posture before this Court, both before and after this Court's April 23, 2004 *Faretta* hearing. His superficial willingness to cooperate with the Court, as expressed on that single occasion, therefore, is simply not credible. Instead, the Court finds that this apparent cooperation is intended, as have all his other actions, to provide him with an unbridled opportunity to manipulate this Court and disrupt its proceedings. The defendant has not sought to proceed *pro se* because he genuinely seeks to conduct his own defense; indeed, in almost a year, Outterbridge has chosen to do nothing to defend the case, or to assist his counsel in doing so,[5] other

---

5. Again, Outterbridge's post-*Faretta* hearing conduct is instructive of his bad faith. In connection with a motion filed by counsel, Rocco C. Cipparone, Jr., for suppression of evidence, there was a lack of any factual proffer to trigger a suppression hearing such as by, for example, facts raising a question of voluntariness or lack of *Miranda* warnings. To enable Outterbridge to fill this necessary gap by providing a rational factual basis for a hearing (where the statements and documents

than to attack the prosecution, all defense counsel, and the judicial officers assigned to this case, without relent and without remorse. Outterbridge has asked to proceed *pro se* because he wishes an enhanced ability to obstruct the Court, deflect attention from the merits of the case, delay the trial, and disrupt the orderly administration of justice. This does not establish a valid waiver of the fundamental Sixth Amendment right to counsel.

Therefore, this Court will deny the request of defendant Outterbridge to proceed *pro se* because he has failed to validly waive his right to counsel. Rocco C. Cipparone, Jr., Esquire will remain his attorney in this matter until further Order of the Court.

### III. CONCLUSION

For the foregoing reasons, this Court finds that defendant Outterbridge has failed to effectuate a valid waiver of his right to counsel, and will deny his request to proceed *pro se*. Rocco C. Cipparone, Jr., Esquire, therefore, remains his attorney in this matter.

The accompanying Order is entered.

### ORDER DENYING REQUEST OF DEFENDANT OUTTERBRIDGE TO PROCEED PRO SE

This matter coming before the Court because of the request of defendant Arthur T. Outterbridge, a/k/a "Arthor Tomas Ottobrice, Bey," to terminate the services of his court-appointed counsel, Rocco C. Cipparone, Jr., Esquire, and represent himself; the Court having conducted a hearing pursuant to *Faretta v. California*, 422 U.S.

806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), on April 23, 2004 with Lee D. Rudy, Assistant United States Attorney, defense counsel Rocco C. Cipparone, Jr., Esquire, and the defendant present; for good cause and the reasons expressed in the Opinion of today's date;

IT IS this **13th** day of May, 2004, hereby

**ORDERED** that defendant Outterbridge did not effectuate a valid waiver of his Sixth Amendment right to counsel and, therefore, cannot represent himself; and

**IT IS FURTHER ORDERED** that Rocco C. Cipparone, Jr., Esquire continues to represent defendant Outterbridge in this matter, notwithstanding the defendant's attempts to terminate his services, until further Order of this Court.

---

of record suggested no governmental impropriety), the Court gave defendant a further opportunity to make such a preliminary showing by simply submitting an affidavit as to such facts. The due date for the submission (May 7, 2004) passed with Outterbridge apparently refusing to review or sign a draft

affidavit which Mr. Cipparone had prepared for his use. (*See* Order Denying Defendant Outterbridge's Motion to Suppress, filed May 11, 2004.) Thus, where Mr. Outterbridge was clearly advised of this minimal step he could take to assert his suppression rights, he refused to do so.