**UNITED STATES of America,**

v.

**William Oscar HARRIS, a/k/a "Oscaro El Hari, Bey," Reginald David Lundy, a/k/a "Noble R. Dauud Lundi El, Bey," Reginald M. Wooten, a/k/a "Noble R. Asanti, Ali," Arthur T. Outterbridge, a/k/a "Arthor Tomas Ottobrice, Bey," Robert McCurdy, a/k/a "Al Ruberto Moor Core, Dey," Defendants.**

Criminal No. 03–354 (JBS).

United States District Court, D. New Jersey.

Aug. 18, 2004.

---

Christopher J. Christie, by R. Stephen Stigall, Lee D. Rudy, Assistant United States Attorneys, United States Attorney's Office, Camden, NJ, for United States.

Edward F. Borden, Jr., Esquire, Earp Cohn, PC, Cherry Hill, NJ, for defendant William Oscar Harris, a/k/a "Oscaro El Hari, Bey".

Troy A. Archie, Esquire, King, Archie & King, Camden, NJ, for defendant Reginald David Lundy, a/k/a "Noble R. Dauud Lundi El, Bey".

R. Louis Gallagher, II, Esquire, Hainesport, NJ, for defendant Reginald M. Wooten, a/k/a "Noble R. Asanti, Ali".

Rocco C. Cipparone, Jr., Esquire, Haddon Heights, NJ, for defendant Arthur T.

Outterbridge, a/k/a "Arthor Tomas Ottobrice, Bey".

Charles Sandilos, Esquire, Haddon Heights, NJ, for defendant Robert McCurdy, a/k/a "Al Ruberto Moor Core, Dey".

## OPINION REGARDING JURY TRIAL OF SENTENCING FACTORS

SIMANDLE, District Judge.

On June 24, 2004, after twelve months of pretrial proceedings, ten days of trial, and the testimony of twenty-seven witnesses, the government completed its case-in-chief in this complex criminal case involving a conspiracy to produce and pass over ten-million dollars in fraudulent money orders, and rested. On the same day, the United States Supreme Court issued its decision in *Blakely v. Washington,* —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), a decision which called into serious doubt the constitutionality of the United States Sentencing Guidelines which permit a district judge to take into consideration, when sentencing a defendant, certain aggravating sentencing factors which he finds have been established by a preponderance of the evidence. The *Blakely* Court, considering a similar sentencing scheme in the State of Washington, held that a criminal defendant's Sixth Amendment right to trial by jury applies to aggravating sentencing factors, such that any fact, other than a prior conviction, that increases a sentence beyond the base offense range authorized by statute, unless stipulated by the defendant, must be proved to a jury beyond a reasonable doubt. This Opinion details the steps that this Court took to manage the continuing trial before it and to protect the rights of the five defendants involved, in light of the new legal landscape (and indeed the uncertainties) created by the *Blakely* decision. The defendants have asserted that no sentencing factors trial should be convened because these factors were not squarely presented to a grand jury and contained in the Indictment. The Court rejected that argument and conducted the sentencing phase trial to the jury after due notice to defendants, for reasons stated herein.

## I. BACKGROUND

This case involves a twenty-five count Indictment filed on May 6, 2003 charging nine defendants with conspiracy to produce and pass, and with producing and passing, false and fictitious money orders purporting to be authorized by the United States Department of Transportation and the United States Department of the Treasury in amounts which total more than ten-million dollars, in violation of 18 U.S.C. § 371 (conspiracy Count 1) and 18 U.S.C. §§ 514(a)(2) and 2 (substantive Counts 2–25). Its lengthy pretrial history has been well-documented in prior opinions of this Court.[1] On June 7, 2004, the trial of five of the nine defendants, namely William Oscar Harris, a/k/a "Oscaro El Hari, Bey,"

---

1. *See, e.g. United States v. Harris,* Crim. No. 03–354(JBS), Opinion Regarding Recusal and Disqualification (D.N.J. May 24, 2004); *United States v. Harris,* 317 F.Supp.2d 542 (D.N.J. 2004), Opinion Addressing Request of Defendant Outterbridge to Proceed Pro Se (D.N.J. 2004); *United States v. Harris,* Crim. No. 03–354(JBS), Opinion Regarding Severance (D.N.J. April 30, 2004); *id.,* Opinion Finding Defendants William Oscar Harris, Reginald M. Wooten, Arthur T. Outterbridge, and Robert McCurdy in Civil Contempt of Court (D.N.J. April 22, 2004); *id.,* Order Finding Defendant Reginald Wooten in Civil Contempt of Court (D.N.J. April 14, 2004); *id.,* Opinion Regarding Restrictions on Filing and Other Communications (D.N.J. Aug. 27, 2003); *id.,* Opinion Regarding Jurisdiction (D.N.J. Aug. 15, 2003); *id.,* Opinion (D.N.J. Aug. 14, 2003) (regarding August 8, 2003 *Faretta* hearing and civil contempt of Harris, Reginald Wooten, and Outterbridge at hearing).

("Harris"), Reginald David Lundy, a/k/a "Noble R. Dauud Lundi El, Bey," ("Lundy"), Reginald M. Wooten, a/k/a "Noble R. Asanti, Ali," ("Reginald Wooten"), Arthur T. Outterbridge, a/k/a "Arthor Tomas Ottobrice, Bey," ("Outterbridge"), and Robert McCurdy, a/k/a "Al Ruberto Moor Core, Dey," ("McCurdy"), began before the undersigned district judge and a jury.[2]

The charges in this matter were factually rich, requiring the government to establish that the five defendants conspired to pass or attempt to pass, and passed or attempted to pass, fraudulent money orders which purported to represent actual securities issued by the United States Department of Transportation or the United States Department of the Treasury. The defendants' scheme, for which they were convicted, was complex. In essence, the defendants, all American-born, but all members of an organization known as the Al Moroccan Empire or Moors, allegedly subscribe to the belief that they are sovereigns of an empire that predates the United States, meaning that the United States owes them money for use of their land and that the United States cannot subject them to its criminal laws. To this end, the testimony revealed that the defendants had money orders printed which purported to draw on accounts at the United States

Department of Transportation or Department of the Treasury. The "authorization money orders" or "certified drafts" bore all the signs of legitimate financial instruments and were generally presented by the defendants to satisfy outstanding loans and mortgages for themselves and others.[3]

The Court and the jury heard about this complex scheme over the course of ten trial days, with testimony from twenty-seven government witnesses. Then, at the end of the day on Thursday, June 24, 2004, the Government rested, and court was adjourned until Monday, June 28, 2004.

Meanwhile, on June 24, 2004, the United States Supreme Court issued its decision in *Blakely v. Washington,* — U.S. —, 124 S.Ct. 2531 (2004), finding that a sentence imposed under the State of Washington's sentencing scheme was unconstitutional because it allowed the trial judge to impose an enhanced sentence based on his finding, at a sentencing hearing, that a certain statutorily-defined aggravating factor was established by the prosecutor by a preponderance of the evidence, in violation of the defendant's Sixth Amendment right to a trial by jury. The Court found that such a result was required by its prior decision in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435

---

**2.** Pursuant to an Opinion and Order Regarding Severance issued on April 30, 2004, the Court severed the trial in this matter, such that the case against these five incarcerated defendants would commence on June 7, 2004, followed at a later date by a trial involving the case against the other four defendants, namely Patricia A. Crisp, a/k/a "Patria Ahna Cristos, Ali," Crystal V. Wooten, a/k/a "Kris'taal, Ali," "Kristin Young," Lisa A. Brown, a/k/a "El Iysah," and Cesi Aquia El Binyamiyn, Bey. *United States v. Harris,* Crim. No. 03–354(JBS), Opinion Regarding Severance (D.N.J. April 30, 2004). The second trial has not yet occurred; it is currently scheduled to commence before the undersigned on September 20, 2004.

**3.** Upon receipt, the financial institution generally began the process of releasing its interest in the underlying property immediately, meaning that, by the time the money order was returned for insufficient funds, the institution could have released its interest in the property. For example, IndyMac Bank completed the process and cancelled two secured loans before the money orders totaling $89,000 were returned as worthless; it was unable to reinstate its lien because the underlying properties had, by then, been re-encumbered by other mortgages.

(2000), which held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Blakely,* —— U.S. at ——, 124 S.Ct. at 2536 (quoting *Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348). The Court further provided that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Id.* at 2537.

The Supreme Court did not determine the constitutionality of the Federal Sentencing Guidelines, instead providing, in footnote 9, that:

> The United States, as *amicus curiae,* urges us to affirm. It notes differences between Washington's sentencing regime and the Federal Sentencing Guidelines, but questions whether those differences are constitutionally significant. The Federal Guidelines are not before us, and we express no opinion on them.

*Id.* at 2538, n. 9 (internal citation omitted).

The Court raised the *Blakely* decision to all parties on Monday morning, June 28, 2004, and heard arguments from counsel regarding its application to the ongoing trial. The Court denied the Government's request to reopen its case-in-chief should the Court determine that *Blakely* applies, but granted its request to convene a subsequent sentencing trial should the jury find the defendants guilty. The case, therefore, would proceed through the conclusion of the guilt phase as planned, and would then continue, if necessary, as though *Blakely* applies, in order best to protect the rights of the defendants to trial by jury. To this end, the Court required the Government to provide notice to defendants, as soon as practicable, of the sentencing factors which it would intend to prove should the jury return a guilty verdict. If the jury did, in fact, return a guilty verdict, the Court would then commence the sentencing phase of the trial before the same jury.

The defense presented evidence on the guilt phase, and rested on June 28, 2004. The jury was charged on June 29th, heard the closing arguments of counsel, and then began its deliberations at the end of the day on June 30th, with a Redacted Indictment,[4] Jury Instructions, and a Jury Verdict Form that was solely addressed guilt or innocence of the crimes charged, *see Appendix A* (attached hereto). The jury returned a guilty verdict on all counts for all defendants on Friday, July 2, 2004. The jury was then directed to return on July 7, 2004 for the sentencing phase of trial.

Meanwhile, on July 1, 2004, while the jury had been deliberating, the Government provided written "Notice of Sentencing Factors" to the defendants, reproduced herein in *Appendix B.* After the jury returned its guilty verdicts, counsel for defendants Outterbridge and McCurdy, joined by counsel for the other defendants, filed opposition to the sentencing trial procedure on July 5, 2004, asserting that the Notice of Sentencing Factors was constitutionally deficient under *Blakely* because the sentencing factors were not presented to a Grand Jury and charged in the Indictment. Defendants also objected to the lack of specificity with which the obstruction-of-justice sentencing factor was plead.

The Court heard the arguments of counsel on July 6, 2004 regarding the Notice

---

**4.** The Indictment was redacted to remove references to the names of the four defendants who will be tried at a later date pursuant to this Court's April 30, 2004 Opinion and Order Regarding Severance, *see* n. 2, *supra.*

provided for the sentencing phase and determined, for reasons stated on the record on July 6th, that the Government should provide greater specificity for the obstruction of justice factor, but that the Government had otherwise provided sufficient notice to proceed with the sentencing phase of the trial. The Government filed an Amended Notice of Sentencing Factors on July 6, 2004, which amended certain charged factors and added fourteen incidents that the Government intended to prove as support for its allegation of obstruction of justice, reproduced herein as *Appendix C.*

Then, in the morning of July 7, 2004, counsel for the defendants objected to the presentation of evidence regarding the obstruction of justice factor alongside evidence regarding the other sentencing factors, as it could likely have a highly prejudicial effect on the jury's verdict. The Court had taken special care throughout the trial to shield the jury from all infor-

mation that could in any way inform them of the defendants' financial harassment of judicial officers, prosecutors, and defense counsel throughout the investigation and prosecution of the matter, for which they are presently being held in civil contempt of court.[5] The Court again recognized the potential prejudicial nature of the defendants' obstructive conduct, and determined, for reasons explained on the record on July 7, 2004, that the sentencing phase would itself be bifurcated. First, the jury would be presented with evidence, and would deliberate and determine, the following five sentencing factors:

1. That the conspiracy continued past November 1, 2001, and that each defendant remained a participant in it;[6]

2. That the amount of loss attributable to each defendant was greater than ten-million dollars;[7]

**5.** *See United States v. Harris*, Crim. No. 03–354, Order Finding Defendant Lundy in Civil Contempt of Court (D.N.J. June 8, 2004); *id.,* Opinion and Order Finding Defendants William Oscar Harris, Reginald M. Wooten, Arthur T. Outterbridge, and Robert McCurdy in Civil Contempt of Court (D.N.J. April 22, 2004).

The Court will not here detail every obstructive paper sent or unauthorized filing made by these defendants, as they have been many, and these have been the subject of several prior Opinions and Orders in this case. In essence, they have involved documents which purport, falsely, to constitute commercial contracts, liens, and security interests, or otherwise seek to collect millions of dollars in payment from the judicial officers, including the undersigned, the prosecutors, and defense counsel, due to their performance of official duties in this case. Some of the documents further threatened that, should the individuals fail to pay, the defendants will place them in involuntary bankruptcy.

**6.** Although the Indictment charged that the conspiracy existed from May 2000 to in or

about December 2001, for which each defendant was convicted, the continuation of the conspiracy beyond November 1, 2001 was of special significance. The applicable U.S. Sentencing Guidelines relating to fraud were amended effective that date and would therefore apply to crimes that were ongoing on that date, as required by U.S.S.G. § 1B1.11(b)(1) and App. Note. 2 (2003). The Government argued, and the Court agreed, that the jury should therefore be asked to determine this fact, since proof of a defendant's willful participation in conspiracy to pass fraudulent instruments would determine which version of the guidelines to apply to a defendant's crimes. The 2000 Guidelines Manual would thus apply unless the Government proved that the defendant's willful participation in this conspiracy continued after November 1, 2001, in which event the 2001 Guidelines Manual would apply.

**7.** If the 2000 Guidelines Manual applied, a loss or intended loss of more than $10,000,000 would result in an enhancement of 15 levels under U.S.S.G. § 2F1.1(b)(1)(P) (2000). If the 2001 Guidelines Manual ap-

3. That the offense involved a scheme to defraud more than one victim;[8]

4. That the offense involved more than minimal planning;[9] and

5. That defendants Harris, Lundy, and Wooten played an aggravated role in the conspiracy.[10]

Then, after returning its verdict on these first five factors, the jury would return to hear evidence, deliberate and determine the sixth sentencing factor:

6. That each defendant willfully obstructed the administration of justice during the course of the investigation or prosecution of this matter.[11]

The Court further ruled that the jury would not be presented with any evidence

that the defendants sought to obstruct or harass the undersigned district judge.[12]

The first segment of the sentencing phase of the trial commenced on July 7, 2004. After preliminary instructions from the Court, opening arguments by counsel, the presentation of documentary and testimonial evidence by the government and defense counsel, jury instructions, and closing arguments, two days later, the jury began its deliberations on Friday, July 9, 2004 with a Redacted Amended Notice of Sentencing Factors,[13] Jury Instructions Regarding Sentencing Facts, and a Sentencing Facts Verdict Form, *see Appendix D* (attached hereto). The jury continued its deliberations on Monday, July 12th and Tuesday, July 13th, until it reached its verdict regarding the five sentencing facts mid-afternoon on Wednesday, July 14,

---

plied, a loss or intended loss of more than $7,000,000 would result in an enhancement of 20 levels under U.S.S.G. § 2B1.1(b)(1)(K) (2001).

**8.** If the 2000 Guidelines Manual applied, if the offense involved a scheme to defraud more than one victim, a 2–level enhancement results under U.S.S.G. § 2F1.1(b)(2) (2000). No similar enhancement applies under the 2001 Guidelines unless more than 10 victims suffered pecuniary loss, *see* U.S.S.G. § 2B1.1(b)(2)(A) and App. Note 1, which was not alleged here by the Government.

**9.** If the 2000 Guidelines Manual applied, an offense involving more than minimal planning results in an upward adjustment of 2 levels under U.S.S.G. § 2F1.1(b)(2) (2000). No similar enhancement applies under the 2001 Guidelines for fraud.

**10.** The Government alleged that defendants Harris, Lundy and Wooten were each an organizer or leader of criminal activity that involved 5 or more participants, giving rise to a 4–level enhancement under either version of the Guidelines Manual, U.S.S.G. § 3B1.1(a). Alternatively, each was charged with the lesser included enhancements for their aggravated roles in the conspiracy giving rise to the 3–

point enhancement of § 3B1.1(b) or the 2–point enhancement under § 3B1.1(c).

**11.** A finding that a defendant willfully attempted to obstruct or impede the administration of justice during the course of the investigation, prosecution or sentencing of the offense of conviction and that the obstructive conduct related to the defendant's offense of conviction or a closely related offense, increases that defendant's offense level by 2 levels under U.S.S.G. § 3C1.1.

**12.** *See Mayberry v. Pennsylvania*, 400 U.S. 455, 464, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971) (holding that where criminal contempt charged "has in it the element of personal criticism or attack upon the judge" and where delay would not be impracticable, a different judge should preside over the criminal contempt trial); *see also Little v. Kern County Superior Court*, 294 F.3d 1075, 1082 (9th Cir. 2002); *United States v. Pina*, 844 F.2d 1, 14 (1st Cir.1988). *But see Del Vecchio v. Illinois Dept. of Corrections*, 31 F.3d 1363, 1374 (7th Cir.1994) (explaining that "not all contemptuous conduct by a person prevents a judge from trying the person for contempt").

**13.** All mention of the obstruction sentencing factor was redacted from the Amended Notice of Sentencing Factors for the first phase of the sentencing trial.

2004.[14]

The trial regarding the obstruction of justice sentencing factor then commenced moments later on July 14th, with preliminary instructions from the Court and an opening argument by the Government. The government then produced two witnesses after which the jury received concluding instructions, and all counsel presented closing arguments. The jury retired for deliberations on Thursday, July 15, 2004 with the Amended Notice of Sentencing Factors, the Additional Jury Instruction Regarding Sentencing Facts, and an Additional Sentencing Facts Verdict Form, see Appendix E (attached hereto), and returned its final verdict on July 16, 2004, finding that the United States proved, beyond a reasonable doubt, that all five defendants had obstructed justice. The two phases of the sentencing trial consumed about four days of trial and three days of jury deliberations to determine a total of twenty-eight sentencing facts. The sentencing hearing is scheduled for October 22, 2004.

## II. DISCUSSION

After the Government rested in this complex criminal case, the Court was faced with a new Supreme Court decision which called the constitutionality of the Federal Sentencing Guidelines into doubt. Though the Supreme Court in Blakely v. Washington, — U.S. —, — n. 9, 124 S.Ct. 2531, 2538 n. 9 (2004), stated that "[t]he Federal Guidelines are not before us, and we express no opinion on them," it was apparent to this Court, and to the parties

before it, that the Blakely decision impacted this federal criminal trial nonetheless. This Opinion details the steps that this Court took to manage the case before it, and apply to it the protections that Blakely may well afford these defendants, as we await a more definitive ruling from the Supreme Court.

### A. Applicability of Blakely v. Washington

In the days immediately following the issuance of the Blakely decision, the parties before this Court questioned whether the Court should apply the protections of Blakely to this matter. The Blakely decision involved the sentencing scheme of the State of Washington, whereas this matter involves the sentencing scheme of the Federal Government, a scheme on which the Court "express[ed] no opinion" in Blakely and which is distinguishable from the Washington scheme. See Blakely, — U.S. at — n. 9, 124 S.Ct. at 2538 n. 9. However, the distinctions between the two guideline schemes paled in comparison to the clear holding of Blakely that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt," with the "statutory maximum" being the "maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely, — U.S. at — – —, 124 S.Ct. at 2536–37. Under this standard required by the Sixth Amendment according to Blakely, this Court could "exceed [its]

---

**14.** The jury found that Harris, Lundy, Wooten and McCurdy participated in the conspiracy beyond November 1, 2001, while defendant Outterbridge was not shown to have done so; that each of the five defendants was accountable for a loss or intended loss of more than $10,000,000; that each defendant engaged in

more than minimal planning; and that the crimes of each involved more than one victim. The jury also found that Harris was the organizer of criminal activity involving five or more participants, while Lundy and Wooten were managers or supervisors of such activity.

proper authority" if it "inflict[ed] punishment that the jury's verdict alone does not allow." *See Id.* at 2537.

To date, it is not entirely clear whether or not *Blakely* applies to the Federal Sentencing Guidelines. The Seventh and Ninth Circuits have held "that *Blakely* dooms the guidelines insofar as they require that sentences be based on facts found by a judge," *United States v. Ameline*, 376 F.3d 967 (9th Cir.2004); *United States v. Booker*, 375 F.3d 508 (7th Cir. 2004), while the Fifth Circuit has held that *Blakely* has not altered the Federal Guidelines because of "constitutionally meaningful differences between Guidelines ranges and United States Code maxima," with the statutory maximum for *Apprendi* purposes found in the United States Code, rather than the Guidelines, *United States v. Pineiro*, 377 F.3d 464 (5th Cir.2004). The Third Circuit has not spoken to the issue since *Blakely*, and the Second, Sixth, and Eighth Circuits have issued opinions without providing definitive answers, *United States v. Mooney*, 2004 WL 1636960 (8th Cir. July 27, 2004) (remanding case for consideration of issues raised under *Blakely*); *United States v. Montgomery*, 2004 WL 1562904 (6th Cir. July 14, 2004) (vacating decision finding Sentencing Guidelines unconstitutional for rehearing *en banc*); *United States v. Penaranda*, 375 F.3d 238 (2d Cir.2004) (en banc) (certifying three questions for review by the United States Supreme Court). More recently, the Second Circuit upheld the Guidelines, holding that circuit precedent on the Guidelines remains good law unless and until the Supreme Court says otherwise. *United States v. Mincey*, 380 F.3d 102 (2d Cir. 2004).

The question of whether the Federal Sentencing Guidelines, to the extent they allow the district judge to determine certain aggravating sentencing facts, violate the Sixth Amendment right to a jury trial will soon be resolved by the United States Supreme Court, which has granted certiorari and scheduled oral argument for October 4, 2004 for consolidated appeals of the Seventh Circuit decision in *United States v. Booker* and the District of Maine's decision in *United States v. Fanfan, see United States v. Booker*, —— U.S. ——, 125 S.Ct. 11, —— L.Ed.2d ——, 2004 WL 1713654 (Aug. 2, 2004); *United States v. Fanfan*, —— U.S. ——, 125 S.Ct. 12, —— L.Ed.2d ——, 2004 WL 1713655 (Aug. 2, 2004). This Court, though, could not await clarification of *Blakely's* impact. Instead, on June 24, 2004, the issue that was presented to this Court was how to properly manage an ongoing, complex, factually-rich criminal case with a sitting jury, that involved a sentence which could be vastly increased based on the application of certain sentencing factors contained within the Federal Sentencing Guidelines that would have, pre-*Blakely*, been determined by the sentencing judge. Under these circumstances, the Court determined that the safest course, for the protection of the rights of the defendants to trial by jury of sentencing enhancement facts, was to assume that *Blakely* changed the legal landscape for federal criminal cases, and that the Sixth Amendment, therefore, required that all facts enhancing a criminal defendant's sentence beyond the base offense level to be proven to a jury beyond a reasonable doubt.

In a context where the Supreme Court and all Circuit Courts of Appeals had never previously required a jury trial for proof of disputed sentencing factors, the Court declined to confer a windfall upon these defendants, as some courts have done, by sentencing after *Blakely* upon only those facts inherent in the jury's finding or the defendant's plea of guilty plus stipulated facts, ignoring the enhancements called for under the Sentencing

Guidelines. Similarly, this Court declined, as some other courts have done, to hold that *Blakely* requires that the Federal Sentencing Guidelines be struck down in their entirety as facially invalid, since it seemed possible to apply *Blakely's* teachings to the determination of disputed enhancements under the Sentencing Guidelines in this case. With so many pertinent aggravating factors at play in a matter for which the trial was ongoing, and a Supreme Court decision holding that the Sixth Amendment to the Constitution requires that "any fact" used to enhance a sentence be tried to a jury beyond a reasonable doubt, the Court had no practical choice but to interpret the rights of the defendants in light of *Blakely*, even though doing so imposed the onerous burden of seriatim trials upon the government (to muster its proofs of sentencing facts) and upon the jury (to reconvene for the sentencing phases after the guilt phase).

## B. Whether Indictment of Sentencing Factors was Required

The defendants, though, argued that even if the Sixth Amendment protects the rights of these defendants to have all sentencing factors proven to a jury beyond a reasonable doubt, the Government could not present the sentencing factors at a trial of these defendants because the factors were not charged in the Indictment. This argument was based on a paragraph in Justice O'Connor's dissenting opinion in *Blakely*, where she explained why the "costs" of *Blakely* could be "substantial and real," stating:

> Under the majority's approach, any fact that increases the upper bound, on a judge's sentencing discretion is an element of the offense. Thus, *facts that historically have been taken into account by sentencing judges to assess a sentence within a broad range—such as drug quantity, role in the offense, risk of*

*bodily harm—all must now be charged in an indictment and submitted to a jury,* simply because it is the legislature, rather than the judge, that constrains the extent to which such facts may be used to impose a sentence within a preexisting statutory range.

*Blakely*, —— U.S. at ——, 124 S.Ct. at 2546 (internal citation omitted) (emphasis added). The Court finds, though, that *Blakely* imposed no requirement that the sentencing facts in this matter be charged in the Indictment. Alternatively, if such factors were required to be stated in the Indictment in 2003, the Court finds that the Indictment herein, enhanced by the Bill of Particulars as to the sentencing facts, sufficed to protect the defendants' rights.

The *Blakely* majority's decision regarding sentencing factors, as well as the *Apprendi* and *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002) decisions that preceded it, were based solely on the defendant's Sixth Amendment right to a jury trial, which provides, in pertinent part:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . .

*See Blakely*, —— U.S. at ——, 124 S.Ct. at 2534; *Ring*, 536 U.S. at 588, 122 S.Ct. 2428; *Apprendi*, 530 U.S. at 476, 120 S.Ct. 2348. The decisions did not address the defendant's Fifth Amendment right to indictment, which provides, in pertinent part:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . .

Thus, *Apprendi* was founded upon recognition of the right to jury trial of facts that

may result in a sentence greater than the statutory maximum. *Apprendi* defined itself as addressing "the narrow issue that we must resolve," 530 U.S. at 474, 120 S.Ct. 2348, namely, "whether the Due Process Clause of the Fourteenth Amendment requires that a factual determination authorizing an increase in the maximum prison sentence for an offense from 10 to 20 years be made by a jury on the basis of proof beyond a reasonable doubt." *Id.* at 469, 120 S.Ct. 2348. Accordingly, the Supreme Court noted that the Fourteenth Amendment encompasses the right to trial by jury and the right to have every element of the offense proved beyond a reasonable doubt, but not the right to presentment or indictment of a Grand Jury, stating, "we thus do not address the indictment question separately today." *Apprendi,* 530 U.S. at 477 n. 3, 120 S.Ct. 2348. *Blakely* likewise repeatedly emphasized that the right to jury trial requires that any sentence above the statutory base offense level must rest upon facts found in a jury's verdict or stipulated by the accused. *Blakely,* —— U.S. at ——–——, 124 S.Ct. at 2537–38. The touchstone is whether "the jury's verdict alone does not authorize the sentence." *Id* at 2538.

■ In this matter, though, the defendants seek to extend *Blakely's* decision regarding the Sixth Amendment to require retroactively that sentencing factors also be charged by a Grand Jury. This Court finds, though, that *Blakely* does not compel such a result under the circumstances of this case, where the sentencing factors would have needed to be charged in an Indictment entered over a year before *Blakely.* The Court does find, though, that the *Blakely* Court intended that the defendants be provided due notice of the sentencing factors with which they would be charged to prevent prejudicial surprise at trial. Such notice was provided here in the United States' Notice and Amended

Notice of Sentencing Factors. (*See Appendix* B and C, attached hereto). The jury made specific findings on each sentencing fact. (*See Appendix* D and E, attached).

■ It is well-established that an Indictment does not need to set forth in great detail the charges against the defendant provided that it includes "a plain, concise, and definite written statement of the essential facts constituting the offense charged" and "the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated." Fed.R.Crim.P. 7(c)(1). This indictment clearly passed that test. Should the defendant show cause that he needs additional information because the absence of such "factual or legal information significantly impairs the defendant's ability to prepare his defense or is likely to lead to prejudicial surprise at trial," the Court "may direct the government to file a bill of particulars." Fed. R.Crim.P. 7(f); *United States v. Rosa,* 891 F.2d 1063, 1066 (3d Cir.1989). The bill of particulars is "not intended to provide the defendant with the fruits of the government's investigation," but is instead "intended to give the defendant only that minimum amount of information necessary to permit the defendant to conduct his own investigation." *United States v. Smith,* 776 F.2d 1104, 1111 (3d Cir.1985) (internal citations omitted).

Here, while the Indictment did not recite specific sentencing factors by "chapter and verse," it is clear that the Indictment charged the defendants with a factual basis that supports five of the six factors. *First,* for the factor that the defendants were willful members of an active conspiracy past November 1, 2001, the Indictment charged that "[f]rom at least as early as in or about May 2000 to in or about Decem-

ber 2001, in the District of New Jersey, and elsewhere, defendants ... knowingly and willfully ... conspired ..." (Indictment Count I, ¶ 5.) *Second,* for the factor that the intended loss of the conspiracy exceeded ten-million dollars, the Indictment charged that "[t]he amount of the false and fictitious money orders totaled more than $10 million." (Indictment Count I, ¶ 10.) [15]

*Third,* for the factor that the crimes involved more than minimal planning, the Indictment includes forty-three paragraphs explaining the "Defendants' Scheme," and the elaborate overt acts taken to plan and execute the scheme between May 2000 and December 2001, including their filings made with the State of New Jersey, their placement of printing orders at the commercial printer, their inclusion of legal references on the money orders to provide them with an air of legitimacy, and their attempted passing of the money orders between December 2000 and November 2001. (Indictment ¶¶ 3–45.)

*Fourth,* for the factor that the conspiracy offense involved more than one victim, the Indictment provided that the conspiracy's intended victims included the law firm McGahn, Friss, Franks & Tripician (Count I, ¶ 14), Equity One (*id.* ¶¶ 15, 25, 31, 39), North American Mortgage (*id.* ¶¶ 18, 19, 33), IndyMac Bank (*id.* ¶¶ 20, 21), Hudson United Bank (*id.* ¶¶ 26, 30), Atlantic City Fireman's Federal Credit Union (*id.* ¶¶ 27 & 28), American Accounts & Advisers (*id.* ¶ 32), Commerce Bank (*id.* ¶ 34), Ocwen Federal Bank (*id.* ¶ 35), Sun National Bank (*id.* ¶ 36), Avis Financial Services, Inc. (*id.* ¶ 37), and Tropicana Casino and Resort (*id.* ¶ 43).

*Fifth,* for the factor that Harris, Lundy, and Wooten had aggravating roles in the conspiracy, the Indictment charges them as individuals who took specific steps to plan and oversee the conspiracy. Harris, for example, is charged with filing initial UCC financing statements with the New Jersey Division of Revenue (Indictment, Count I, ¶ 2), with establishing the account at the commercial printer (*id.* ¶ 7), with placing orders for printing 1,650 money orders and for picking up 650 of them, (*id.* ¶¶ 8, 10, 16, 23, 24, 38), with attending three meetings to discuss the scheme, (*id.* ¶¶ 40–42), and with attempting to personally pass $6,299,131.51 in fraudulent money orders, (*id.* ¶¶ 11, 12, 18, 19, 25, 37). Defendant Lundy's role allegedly included filing financing statements with the State of New Jersey, (*id.* ¶ 4), taking delivery of 500 of the money orders from the commercial printer (*id.* ¶ 17), and with personally attempting to pass $5,643,202.12 in fraudulent money orders, (*id.* ¶¶ 20, 21, 36, 37, 39, 43, 44, 45). Defendant Wooten was charged with filing the financing statements with the New Jersey Division of Revenue (*id.* ¶ 1), with placing an order with the printer for 500 money orders (*id.* ¶ 29), with attending three meetings with the co-conspirators, (*id.* ¶¶ 40–42), and with personally submitting $184,100.00 in fraudulent money orders, (*id.* ¶¶ 33, 34, 35).

As a result, though the five sentencing factors relating to time of the conspiracy, amount of loss, more than minimal plan-

---

**15.** The Indictment further describes the specific amounts of some of the money orders that were passed during the conspiracy, including money orders in amounts of $174,126.00, $288,940.00, $64,720.00, $59,396.00, $311,949.51, $5,400,000.00, $39,000.00, $50,000.00, $4,500.00, $53,100.00, $65,000.00, $15,801.06, $15,801.06, $152,000.00, $2,100.00, and $30,000.00, $53,000.00, $14,156.45, $16,953.96, $5,119.41, $8,031.58, $53,947.11, $12,660.00, $7,610.00, and $221.00. (*See* Indictment ¶¶ 12–45.)

ning, number of victims, and role in the offense were not explicitly charged as such in the Indictment, their factual bases were. The defendants then received the more specific charge of these factors, analogous to a Bill of Particulars, in the form of the Notice of Sentencing Factors (*Appendix B*), even before the guilt phase verdict was returned in this matter. The defendants were also provided an opportunity to be heard on the sufficiency of the charged sentencing factors, as amended in the Amended Notice of Sentencing Factors (*Appendix C*), prior to proceeding to trial on them. Under these circumstances, there can be no assertion that these defendants suffered any "prejudicial surprise at [their sentencing factors] trial," *see* Fed. R.Crim.P. 7(f), where they received an Indictment, supplemented by a Notice of Sentencing Factors that acted as a Bill of Particulars to clarify the precise enhancement factors at stake, all before commencement of the sentencing phases.

■ As for the sixth sentencing factor, the obstruction of justice factor, it is clear that neither it, nor its factual basis, was charged, nor could have been charged, in the Indictment. The Court finds, though, that such facts were not required to be charged in the Indictment and that the Amended Notice of Sentencing Factors provided sufficient notice to the defendants to allow them to prepare for trial on the enhancement for obstructing justice.

First, the obstruction facts could not have been charged in the Indictment because the majority were not known at the time that the charges were presented to the Grand Jury. Of the fourteen charged incidents in the Amended Notice of Sentencing Factors, just two occurred prior to the May 6, 2003 Indictment. *See Appendix C,* Amended Notice of Sentencing Factors, ¶¶ 3A, 3B. On the other hand, three of the charged incidents related to conduct occurring on the Friday prior to jury selection, and one related to conduct occurring while the jury was deliberating on the guilt phase. *Id.* ¶¶ 3K–3M. Justice O'Connor, in her dissenting Opinion in *Blakely* recognized the problem in requiring Indictment of sentencing factors where "[s]ome facts that bear on sentencing either will not be discovered, or are not discoverable, prior to trial. For instance, a legislature might desire that defendants who act in an obstructive manner during trial or post-trial proceedings receive a greater sentence than defendants who do not. *See, e.g.* United States Sentencing Commission, Guidelines Manual, § 3C1.1." The response to Justice O'Connor's concern, in the circumstances of this case, was to require the United States to provide explicit written notice of the obstruction facts, before the sentencing phase, and to require proof beyond a reasonable doubt to a unanimous jury.

Second, to have charged such facts in the Indictment, or to have superseded the Indictment to do so, would have required bifurcation of the obstruction phase in any event. Indeed, it was the defendants who sought to have the obstruction factor tried separately from the other sentencing factors, to assure that it would not have any prejudicial spill-over effect. There was simply no reason to include such information about obstruction of justice in the Indictment or in a Superceding Indictment which would be presented to a jury determining issues of guilt and innocence on unrelated fraud charges.[16]

---

16. It would be highly ironic if, after *Blakely,* a defendant's attempt to obstruct justice during trial preparation and trial could never be presented as a sentencing enhancement factor.

If so, then here, instead of exposing these defendants to the mere 2–level enhancement of U.S.S.G. § 3C1.1, for which the jury has found guilt beyond a reasonable doubt in this

As a result, this Court finds that the Fifth Amendment, when interpreted in light of the *Blakely* Court's Sixth Amendment holding, did not require that the Government present charges of obstruction of justice to the Grand Jury prior to proceeding to trial on the obstruction of justice sentencing factor. Instead, the defendants were entitled to reasonable written notice of the charges asserted against them; such notice, and an opportunity to be heard, was provided to these defendants in the Notice of Sentencing Factors and Amended Notice of Sentencing Factors.[17]

Moreover, there was no surprise here. The defendants have been made aware, throughout the pendency of this matter, that they do not have a right to obstruct the Court, the prosecution, or the defense of others accused herein. Indeed, they have, on several occasions, been informed that they "have no authority under any law, statute, regulation, or rule to assert lien claims against government officials involved in this case," and that their obstructive behavior, including any "false lien claims and other threatening and fraudulent communications [sent] to the Court, to the United States Attorney and Assistant United States Attorney, and to any other governmental entity or agent associated with this case, and to any attorney appearing on behalf of defendants in this case," could subject them to punishment.[18] As a result, the fact that the fraudulent and harassing lien claims and threats of involuntary bankruptcy upon fictitious indebtedness were asserted as a basis for additional punishment in this matter could not have been a surprise to these criminal defendants. The only "surprise," as a consequence of *Blakely*, was that the United States would be required by this Court to prove such obstruction to a jury beyond a reasonable doubt, rather than in the less formal manner contemplated by the Sentencing Guidelines.

For these reasons, the Court finds that the defendants were provided sufficient notice under the Fifth and Sixth Amendments regarding each sentencing factor charge asserted against them.

case already, the defendants would instead be required to face a new indictment for obstruction. If the criminal statutes of 18 U.S.C. §§ 1503 and 1512 are used as examples, since they were referenced in the Amended Notice of Sentencing Factors (*Appendix C*, attached), in that case, the defendants would be exposed to a maximum sentence of 10 years under § 1503(b)(3) or § 1512(b), or a maximum penalty of 20 years under § 1512(c), consecutive to the sentence upon the underlying crimes in this case, for each such obstruction or attempted obstruction.

17. In addition, the Court notes that under the circumstances presented here, the defendants were provided the longest possible time to prepare for trial on the sixth factor. They were first given notice on July 1, 2004, then were given more specific notice on July 6, 2004, and then were not tried for the obstruction of justice factor until July 14, 2004.

18. *See, e.g. United States v. Harris,* Crim. No. 03–354, Order Finding Defendant Lundy in Civil Contempt of Court (D.N.J. June 8, 2004); *id.,* Order Pertaining to Threatened Bankruptcy Filings (D.N.J. May 10, 2004); *United States v. Harris,* 317 F.Supp.2d 542, Opinion Addressing Request of Defendant Outterbridge to Proceed Pro Se (D.N.J.2004); *United States v. Harris,* Crim. No. 03–354(JBS), Opinion Regarding Severance (D.N.J. April 30, 2004); *id.,* Opinion Finding Defendants William Oscar Harris, Reginald M. Wooten, Arthur T. Outterbridge, and Robert McCurdy in Civil Contempt of Court (D.N.J. April 22, 2004); *id.,* Order Finding Defendant Reginald Wooten in Civil Contempt of Court (D.N.J. April 14, 2004); *id.,* Opinion Regarding Restrictions on Filing and Other Communications (D.N.J. Aug. 27, 2003); *id.,* Opinion Regarding Jurisdiction (D.N.J. Aug. 15, 2003); *id.,* Opinion (D.N.J. Aug. 14, 2003) (regarding August 8, 2003 *Faretta* hearing and civil contempt of Harris, Reginald Wooten, and Outterbridge at hearing).

## C. Bifurcation of Sentencing Hearing

█ Having concluded that the defendants were appropriately charged with the six sentencing factors, the Court determined that the sentencing hearing should be bifurcated into two parts, such that the obstruction of justice factor would not be heard until the jury had reached its verdict on all other sentencing factors.

The Court has discretion to sever the counts charged in a criminal matter for purposes of trial where combining the counts for trial "appears to prejudice a defendant or the government." Fed. R.Crim.P. 14(a); [19] *United States v. Eufrasio*, 935 F.2d 553, 568 (3d Cir.1991). The trial judge has a "continuing duty at all stages of a trial" to sever the trial "if prejudice does appear." *Schaffer v. United States*, 362 U.S. 511, 516, 80 S.Ct. 945, 4 L.Ed.2d 921 (1960); *see also United States v. Berkowitz*, 662 F.2d 1127, 1132 (5th Cir.1981); *Hill v. United States*, 418 F.2d 449, 450 (D.C.Cir.1968). The "determination of risk of prejudice" and whether severance is necessary is left "to the sound discretion of the trial judge." *U.S. v. Odom*, 13 F.3d 949, 958 (6th Cir.1994).

Generally, courts do not sever the counts in a matter, as a jury instruction to view evidence as to each count separately can cure any prejudicial "spill-over" effect. *See, e.g. United States v. Silvestri*, 790 F.2d 186, 189 (1st Cir.1986). However, where one charged count involves evidence of a prior crime that is not relevant to the other count, the "trial judge must 'proceed with caution' to avoid undue prejudice." *United States v. Dockery*, 955 F.2d 50, 53 (D.C.Cir.1992). The "primary concern is that prior crimes evidence weighs too much with the jury and over-persuades them to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge." *Id.* (quoting *Michelson v. United States*, 335 U.S. 469, 476, 69 S.Ct. 213, 93 L.Ed. 168 (1948)). The risk of undue prejudice is especially high "whenever joinder of counts allows evidence of other crimes to be introduced in a trial of charges with respect to which the evidence would otherwise be inadmissible." *Id.; see also United States v. Cook*, 538 F.2d 1000, 1004 n. 12 (3d Cir.1976).

These concerns apply to the alleged sentencing factors charged here where, had the jury heard the conduct of the defendants which, likely, could have qualified as a separate crime for obstruction of justice, the risk of undue prejudice would have been high.

Importantly, the obstruction of justice charged in this matter was directed against the prosecutors and judicial officers, other than the undersigned, who have been involved in the case. Needless to say, the prosecutors did not testify about the harassment and obstruction, *see* R.P.C. 3.7. However, the jury was presented evidence, in this final phase of trial, about harassment to attorneys that they had watched in court over the course of a six-week trial. To have heard such personalized evidence at any earlier stage could have possibly prejudiced the jury into attributing "bad character" to all the defendants regarding all of their charged actions. Severance guaranteed that could not occur.

As a result, this Court granted the motion of the defendants to sever the sen-

---

**19.** Fed.R.Crim.P. 14(a) provides:

If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

tencing trial, such that the obstruction factor would be tried after the jury had reached a verdict on all other sentencing factors. As a result, this Court obtained a verdict from one jury, which establishes, beyond a reasonable doubt, the culpability of each defendant in this matter regarding not just the crimes charged, but the aggravating sentencing factors as well.

### III. CONCLUSION

For the foregoing reasons, this Court denies the motion of the defendants to require Indictment of the sentencing factors charged against defendants Harris, Lundy, Wooten, Outterbridge, and McCurdy, as the Court finds that the defendants' Fifth and Sixth Amendment rights were fully protected by the process utilized in this Court to manage this complex criminal matter in light of the Supreme Court's intervening *Blakely* decision.

The accompanying Order is entered.

### APPENDIX A

*United States v. Harris, et al.,*
**Criminal No. 03–354(JBS)**

**Jury Verdict Form—Guilt Phase**
*JURY VERDICT FORM*

We, the unanimous Jury, find as follows:

#### COUNT ONE

[Conspiracy in violation of 18 U.S.C. Section 371]

WILLIAM OSCAR HARRIS, a/k/a "Oscaro El Hari, Bey,"

Not Guilty_____      Guilty_____

REGINALD DAVID LUNDY, a/k/a "Noble R. Dauud Lundi El, Bey,"

Not Guilty_____      Guilty_____

REGINALD M. WOOTEN, a/k/a "Noble R. Asanti, Ali,"

Not Guilty_____      Guilty_____

ARTHUR T. OUTTERBRIDGE, a/k/a "Arthor Tomas Ottobrice, Bey,"

Not Guilty_____      Guilty_____

ROBERT McCURDY, a/k/a "Al Ruberto Moor Core, Dey,"

Not Guilty_____      Guilty_____

#### COUNT TWO

[18 U.S.C. Sections 514(a)(2) and 2]

WILLIAM OSCAR HARRIS, a/k/a "Oscaro El Hari, Bey,"

Not Guilty_____      Guilty_____

#### COUNT THREE

[18 U.S.C. Sections 514(a)(2) and 2]

WILLIAM OSCAR HARRIS, a/k/a "Oscaro El Hari, Bey,"

Not Guilty_____      Guilty_____

#### COUNT FOUR

[18 U.S.C. Sections 514(a)(2) and 2]

WILLIAM OSCAR HARRIS, a/k/a "Oscaro El Hari, Bey,"

Not Guilty_____.      Guilty_____

#### COUNT FIVE

[18 U.S.C. Sections 514(a)(2) and 2]

WILLIAM OSCAR HARRIS, a/k/a "Oscaro El Hari, Bey,"

Not Guilty_____      Guilty_____

#### COUNT SIX

[18 U.S.C. Sections 514(a)(2) and 2]

WILLIAM OSCAR HARRIS, a/k/a "Oscaro El Hari, Bey,"

Not Guilty_____      Guilty_____

#### COUNT SEVEN

[18 U.S.C. Sections 514(a)(2) and 2]

WILLIAM OSCAR HARRIS, a/k/a "Oscaro El Hari, Bey,"

Not Guilty_____      Guilty_____

REGINALD DAVID LUNDY, a/k/a "Noble R. Dauud Lundi El, Bey,"

Not Guilty_____      Guilty_____

## COUNT EIGHT

[18 U.S.C. Sections 514(a)(2) and 2]

REGINALD DAVID LUNDY, a/k/a "Noble R. Dauud Lundi El, Bey,"

Not Guilty———      Guilty———

## COUNT NINE

[18 U.S.C. Sections 514(a)(2) and 2]

REGINALD DAVID LUNDY, a/k/a "Noble R. Dauud Lundi El, Bey,"

Not Guilty———      Guilty———

## COUNT TEN

[18 U.S.C. Sections 514(a)(2) and 2]

REGINALD DAVID LUNDY, a/k/a "Noble R. Dauud Lundi El, Bey,"

Not Guilty———      Guilty———

## COUNT ELEVEN

[18 U.S.C. Sections 514(a)(2) and 2]

REGINALD DAVID LUNDY, a/k/a "Noble R. Dauud Lundi El, Bey,"

Not Guilty———      Guilty———

## COUNT TWELVE

[18 U.S.C. Sections 514(a)(2) and 2]

REGINALD DAVID LUNDY, a/k/a "Noble R. Dauud Lundi El, Bey,"

Not Guilty———      Guilty———

## COUNT THIRTEEN

[18 U.S.C. Sections 514(a)(2) and 2]

REGINALD M. WOOTEN, a/k/a "Noble R. Asanti, Ali,"

Not Guilty———      Guilty———

## COUNT FOURTEEN

[18 U.S.C. Sections 514(a)(2) and 2]

REGINALD M. WOOTEN, a/k/a "Noble R. Asanti, Ali,"

Not Guilty———      Guilty———

## COUNT FIFTEEN

[18 U.S.C. Sections 514(a)(2) and 2]

REGINALD M. WOOTEN, a/k/a "Noble R. Asanti, Ali,"

Not Guilty———      Guilty———

## COUNT SIXTEEN

[18 U.S.C. Sections 514(a)(2) and 2]

ARTHUR T. OUTTERBRIDGE, a/k/a "Arthor Tomas Ottobrice, Bey,"

Not Guilty———      Guilty———

## COUNT SEVENTEEN

[18 U.S.C. Sections 514(a)(2) and 2]

ARTHUR T. OUTTERBRIDGE, a/k/a "Arthor Tomas Ottobrice, Bey,"

Not Guilty———      Guilty———

## COUNT EIGHTEEN

[18 U.S.C. Sections 514(a)(2) and 2]

ARTHUR T. OUTTERBRIDGE, a/k/a "Arthor Tomas Ottobrice, Bey,"

Not Guilty———      Guilty———

## COUNT NINETEEN

[18 U.S.C. Sections 514(a)(2) and 2]

ARTHUR T. OUTTERBRIDGE, a/k/a "Arthor Tomas Ottobrice, Bey,"

Not Guilty———      Guilty———

## COUNT TWENTY

[18 U.S.C. Sections 514(a)(2) and 2]

ARTHUR T. OUTTERBRIDGE, a/k/a "Arthor Tomas Ottobrice, Bey,"

Not Guilty———      Guilty———

## COUNT TWENTY-ONE

[18 U.S.C. Sections 514(a)(2) and 2]

ARTHUR T. OUTTERBRIDGE, a/k/a "Arthor Tomas Ottobrice, Bey,"

Not Guilty———      Guilty———

*COUNT TWENTY–TWO*

[18 U.S.C. Sections 514(a)(2) and 2]

ROBERT McCURDY, a/k/a "Al Ruberto Moor Core, Dey,"

Not Guilty_____     Guilty_____

*COUNT TWENTY–THREE*

[18 U.S.C. Sections 514(a)(2) and 2]

ROBERT McCURDY, a/k/a "Al Ruberto Moor Core, Dey,"

Not Guilty_____     Guilty_____

*COUNT TWENTY–FOUR*

[18 U.S.C. Sections 514(a)(2) and 2]

REGINALD DAVID LUNDY, a/k/a "Noble R. Dauud Lundi El, Bey,"

Not Guilty_____     Guilty_____

_____      _____
Date         Signature of Foreperson

**APPENDIX B**

*United States v. Harris, et al.,*
**Criminal No. 03–354(JBS)**

**Notice of Sentencing Factors**

*NOTICE OF SENTENCING FACTORS*

To: Troy A. Archie, Esquire
King Archie & King
112–114 North 3rd Street
2nd Floor
Camden, NJ 08102

Edward F. Borden, Jr., Esquire
Earp Cohn, P.C.
20 Brace Road, 4th Floor
Cherry Hill, NJ 08034

R. Louis Gallagher, II, Esquire
1487 State Highway 38 West
Hainesport, NJ 08036

Rocco C. Cipparone, Jr., Esquire
203–205 Black Horse Pike
Haddon Heights, NJ 08035

Charles P. Sandilos, Esquire
607 White Horse Pike
Haddon Heights, NJ 08035

Counsel:

PLEASE TAKE NOTICE that following the return of the guilty verdicts in the captioned matter, the United States will seek to prove beyond a reasonable doubt to the empaneled jury the following sentencing factors:

*As to Defendants Harris, Lundy, Wooten, Outterbridge, and McCurdy*

1. That the amount of loss was more than $20,000,000 but less than $50,000,000. U.S.S.G. § 2B1.1(b)(1)(L) (2001).

2. That the offense involved more than 50 victims. U.S.S.G. § 2B1.1(b)(2)(B) (2001).

3. That each defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation or prosecution, which obstructive conduct related to the offense of conviction or a closely related offense. U.S.S.G. § 3C1.1 (2001).

4. If the 2000 Sentencing Guidelines Manual applies, that the offense involved more than minimal planning. U.S.S.G. § 2F1.1(b)(2) (2000).

*As to Defendant Harris, Lundy, and Wooten*

5. That each defendant was an organizer or leader of the criminal activity that involved five or more participants or was otherwise extensive. U.S.S.G. § 3B1.1(a) (2001).

6. That if a defendant is not found to be an organizer or leader of the criminal activity that involved five or more participants or was otherwise extensive, that he was a manager or supervisor of the criminal activity that involved five or more participants or was otherwise extensive. U.S.S.G. § 3B1.1(b) (2001).

7. That if a defendant is not found to be an organizer or leader, or a manager or supervisor, as set forth in paragraphs 5 and 6 above, that he was an organizer, leader, manager, or supervisor in any criminal activity. U.S.S.G. § 3B1.1(c) (2001).

A letter brief is attached.

Respectfully submitted,

CHRISTOPHER J. CHRISTIE
United States Attorney

s/ R. Stephen Stigall

By: LEE D. RUDY
R. STEPHEN STIGALL
Assistant U.S. Attorneys

July 1, 2004

### APPENDIX C

*United States v. Harris, et al.,*
**Criminal No. 03–354(JBS)**

**Amended Notice of Sentencing Factors**

#### *AMENDED NOTICE OF SENTENCING FACTORS*

PLEASE TAKE NOTICE that following the return of the guilty verdicts in the captioned matter, the United States will seek to prove beyond a reasonable doubt to the empaneled jury the following sentencing factors:

*As to Defendants Harris, Lundy, Wooten, Outterbridge, and McCurdy*

1. That the amount of loss was more than $10,000,000 but less than $20,000,000. U.S.S.G. § 2F1.1(b)(1)(P) (2000), or, if the 2001 Guidelines Manual applies, that the amount of loss was more than $7,000,000 but less than $20,000,000. U.S.S.G. § 2B1.1(b)(1)(K) (2001).

2. That the offense involved a scheme to defraud more than one victim. U.S.S.G. § 2F1.1(b)(2)(2000).

3. That each defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation or prosecution, which obstructive conduct related to the offense of conviction or a closely related offense. U.S.S.G. § 3C1.1 (2001).

By way of specificity, the United States intends to prove the following facts, which it submits constitutes obstruction of justice under Section 3C1.1 pursuant to Application Note 4(I); 18 U.S.C. §§ 1503 and 1512; and caselaw interpreting Section 3C1.1:

A. In or about July and August 2001, defendants Harris, McCurdy, and Outterbridge filed [20] UCC–3 filings with the New Jersey Division of Revenue which purported to create liens in the amount of $9,000,000 against Robert J. Cleary, United States Attorney, R. Stephen Stigall, Assistant United States Attorney, and Special Agent Derek E. Altieri with the Federal Bureau of Investigation as a result of grand jury subpoena having been issued to them for the taking of handwriting exemplars. The purported liens are contained in Government Exhibits 2201, 2202, and 2203 which have been admitted into evidence.

B. On or about February 1, 2002, defendant Wooten filed three UCC–1 filings with the New Jersey Division of Revenue which purported to create a lien in the amounts of $3,500,000 and $14,500,000

---

**20.** For the sake of brevity, where the United States alleges that a defendant performed some type of action, the United States further includes within its Notice for each and every action alleged herein that the defendant also aided or abetted, counseled, commanded, induced, procured, or willfully caused that action to be taken.

against Stephen M. Orlofsky, United States District Judge, and R. Stephen Stigall, Assistant United States Attorney, respectively, as a result of grand jury subpoena having been issued to him for the taking of handwriting exemplars. The purported liens are contained in Government Exhibits S–11, S–12, and S–13 which are being provided to the defendants.

C. On or about July 7, 2003, defendants Harris, Lundy, Wooten, Outterbridge, and McCurdy sent correspondence entitled "Notice and Acceptance of Dishonor Request For Account Settlement And Closure Notice Of Intent" to the United States Attorney's Office demanding payment in the amount of $17,280,000 from Christopher J. Christie, United States Attorney, and R. Stephen Stigall, Assistant United States Attorney, among others. A copy of the correspondence is contained in Government Exhibit S–21 which is being provided to the defendants.

D. On or about July 15, 2003, the United States Attorney's Office received from defendant Outterbridge correspondence entitled "Notice By Written Communication/ Security Agreement" claiming that R. Stephen Stigall, Assistant United States Attorney, owes $1,000,000 to Outterbridge per use of that defendant's name. A copy of the correspondence is contained in Government Exhibit S–24 which is being provided to the defendants.

E. On or about July 21, 2003, the United States Attorney's Office received from defendants Harris, Lundy, Outterbridge, and McCurdy correspondence entitled "Notice By Written Communication/Security Agreement" claiming that Christopher J. Christie, United States Attorney, owes $1,000,000 to each of those defendant per use of a particular defendant's name. A copy of the correspondence is contained in Government Exhibit S–22A–E which is being provided to the defendants.

F. On or about July 21, 2003, the United States Attorney's Office received from defendants Harris, Lundy, and McCurdy correspondence entitled "Notice By Written Communication/Security Agreement" claiming that R. Stephen Stigall, Assistant United States Attorney, owes $1,000,000 to each of those defendant per use of a particular defendant's name. A copy of the correspondence is contained in Government Exhibit S–23A–D which is being provided to the defendants.

G. On or about August 21, 2003, defendants Harris, McCurdy, Outterbridge, and Wooten sent to the United States Attorney documents entitled "Invoice" in which each of those defendants purported to claim that R. Stephen Stigall, Assistant United States Attorney, owes each of the defendants millions of dollars. A copy of the correspondence is contained in Government Exhibit S–25 which is being provided to the defendants.

H. On or about April 19, 2004, the United States Attorney's Office received from defendant Lundy correspondence demanding payment of $3,140,000,000 from Christopher J. Christie, United States Attorney, dismissal of the Indictment, and threatening to throw Mr. Christie into involuntary bankruptcy. A copy of the correspondence is contained in Government Exhibit S–26 which is being provided to the defendants.

I. On or about May 6, 2004, the United States Attorney's Office received from defendant Lundy correspondence demanding payment of $3,510,000,000 from Lee D. Rudy, Assistant United States Attorney, dismissal of the Indictment, and threatening to throw Mr. Rudy into involuntary bankruptcy. A copy of the correspondence is contained in Government Exhibit

S–27 which is being provided to the defendants.

J. On or about May 6, 2004, the United States Attorney's Office received from defendant Lundy correspondence demanding payment of $3,510,000,000 from R. Stephen Stigall, Assistant United States Attorney, dismissal of the Indictment, and threatening to throw Mr. Stigall into involuntary bankruptcy. A copy of the correspondence is contained in Government Exhibit S–28 which is being provided to the defendants.

K. On or about June 4, 2004, the United States Attorney's Office received from defendant Lundy correspondence demanding payment of $3,730,000,000 from R. Stephen Stigall, Assistant United States Attorney, dismissal of the Indictment, and threatening to throw Mr. Stigall into involuntary bankruptcy. A copy of the correspondence is contained in Government Exhibit S–29 which is being provided to the defendants.

L. On or about June 4, 2004, the United States Attorney's Office received from defendant Lundy correspondence demanding payment of $3,730,000,000 from Lee D. Rudy, Assistant United States Attorney, dismissal of the Indictment, and threatening to throw Mr. Rudy into involuntary bankruptcy. A copy of the correspondence is contained in Government Exhibit S–30 which is being provided to the defendants.

M. On or about June 4, 2004, the United States Attorney's Office received from defendant Lundy correspondence demanding payment of $3,730,000,000 from Christopher J. Christie, United States Attorney, dismissal of the Indictment, and threatening to throw Mr. Christie into involuntary bankruptcy. A copy of the correspondence is contained in Government Exhibit

S–31 which is being provided to the defendants.

N. On or about June 25, 2004, the United States Attorney's Office received from defendant Lundy correspondence entitled "Notice of Default and Entry for Default Judgment" purporting to claim that Christopher J. Christie, United States Attorney, and Lee D. Rudy and R. Stephen Stigall, Assistant United States Attorneys, among others, would be taken into involuntary bankruptcy. Copies of the correspondence are contained in Government Exhibit S–32—S–34 which are being provided to the defendants.

4. If the 2000 Sentencing Guidelines Manual applies, that the offense involved more than minimal planning. U.S.S.G. § 2F1.1(b)(2) (2000).

### As to Defendant Harris, Lundy, and Wooten

5. That each defendant was an organizer or leader of the criminal activity that involved five or more participants or was otherwise extensive. U.S.S.G. § 3B1.1(a) (2001).

6. That if a defendant is not found to be an organizer or leader of the criminal activity that involved five or more participants or was otherwise extensive, that he was a manager or supervisor of the criminal activity that involved five or more participants or was otherwise extensive. U.S.S.G. § 3B1.1(b) (2001).

7. That if a defendant is not found to be an organizer or leader, or a manager or supervisor, as set forth in paragraphs 5 and 6 above, that he was an organizer, leader, manager, or supervisor in any criminal activity. U.S.S.G. § 3B1.1(c) (2001).

Respectfully submitted,
CHRISTOPHER J. CHRISTIE
United States Attorney

s/ R. Stephen Stigall

By: LEE D. RUDY
R. STEPHEN STIGALL
Assistant U.S. Attorneys

July 6, 2004

## APPENDIX D

*United States v. Harris, et al.,*
Criminal No. 03–354(JBS)

**Sentencing Facts Jury Verdict Form**

### Questions 1–5

*SENTENCING FACTS JURY*
*VERDICT FORM*

We, the unanimous Jury, find as follows:

### 1. TIME OF CONSPIRACY

A. Do you find that the conspiracy continued past November 1, 2001?

No_____ Yes_____

B. If you answered "yes" to part A, who do you find continued as a willful participant in the conspiracy past November 1, 2001?

WILLIAM OSCAR HARRIS, a/k/a "Oscaro El Hari, Bey"

No_____ Yes_____

REGINALD DAVID LUNDY, a/k/a "Noble R. Dauud Lundi El, Bey"

No_____ Yes_____

REGINALD M. WOOTEN, a/k/a "Noble R. Asanti, Ali"

No_____ Yes_____

ARTHUR T. OUTTERBRIDGE, a/k/a "Arthor Tomas Ottobrice, Bey"

No_____ Yes_____

ROBERT McCURDY, a/k/a "Al Ruberto Moor Core, Dey"

No_____ Yes_____

### 2. AMOUNT OF LOSS

State the "amount of loss" attributable to each defendant during his membership in the conspiracy:

WILLIAM OSCAR HARRIS, a/k/a "Oscaro El Hari, Bey"

More than $10,000,000.00 _____
Other [indicate amount] _____

REGINALD DAVID LUNDY, a/k/a "Noble R. Dauud Lundi El, Bey"

More than $10,000,000.00 _____
Other [indicate amount] _____

REGINALD M. WOOTEN, a/k/a "Noble R. Asanti, Ali"

More than $10,000,000.00 _____
Other [indicate amount] _____

ARTHUR T. OUTTERBRIDGE, a/k/a "Arthor Tomas Ottobrice, Bey"

More than $10,000,000.00 _____
Other [indicate amount] _____

ROBERT McCURDY, a/k/a "Al Ruberto Moor Core, Dey"

More than $10,000,000.00 _____
Other [indicate amount] _____

### 3. MORE THAN MINIMAL PLANNING

A. Do you find that the crimes committed by William Oscar Harris, a/k/a "Oscaro El Hari, Bey," involved more than minimal planning?

No_____ Yes_____

B. Do you find that the crimes committed by Reginald David Lundy, a/k/a "Noble R. Dauud Lundi El, Bey," involved more than minimal planning?

No_____ Yes_____

C. Do you find that the crimes committed by Reginald M. Wooten, a/k/a "Noble R. Asanti, Ali," involved more than minimal planning?

No_____ Yes_____

D. Do you find that the crimes committed by Arthur T. Outterbridge, a/k/a "Arthor Tomas Ottobrice,

Bey," involved more than minimal planning?

No_____     Yes_____

E.  Do you find that the crimes committed by Robert McCurdy, a/k/a "Al Ruberto Moor Core, Dey," involved more than minimal planning?

No_____     Yes_____

### 4. NUMBER OF VICTIMS

A.  Do you find that the crimes committed by William Oscar Harris, a/k/a "Oscaro El Hari, Bey," involved more than 1 victim?

No_____     Yes_____

B.  Do you find that the crimes committed by Reginald David Lundy, a/k/a "Noble R. Dauud Lundi El, Bey," involved more than 1 victim?

No_____     Yes_____

C.  Do you find that the crimes committed by Reginald M. Wooten, a/k/a "Noble R. Asanti, Ali," involved more than 1 victim?

No_____     Yes_____

D.  Do you find that the crimes committed by Arthur T. Outterbridge, a/k/a "Arthor Tomas Ottobrice, Bey," involved more than 1 victim?

No_____     Yes_____

E.  Do you find that the crimes committed by Robert McCurdy, a/k/a "Al Ruberto Moor Core, Dey," involved more than 1 victim?

No_____     Yes_____

### 5. ROLE IN THE OFFENSE

A.  What, if any, aggravating role in the offense do you find was played by William Oscar Harris, a/k/a "Oscaro El Hari, Bey?"

_____(a)  organizer or leader of criminal activity that involved five or more participants or was otherwise extensive

_____(b)  manager or supervisor of a criminal activity that involved five or more participants or was otherwise extensive

_____(c)  organizer, leader, manager, or supervisor other than (a) or (b) above

_____(d)  no aggravating role

B.  What, if any, aggravating role in the offense do you find was played by Reginald David Lundy, a/k/a "Noble R. Dauud Lundi El, Bey?"

_____(a)  organizer or leader of criminal activity that involved five or more participants or was otherwise extensive

_____(b)  manager or supervisor of a criminal activity that involved five or more participants or was otherwise extensive

_____(c)  organizer, leader, manager, or supervisor other than (a) or (b) above

_____(d)  no aggravating role

C.  What, if any, aggravating role in the offense do you find was played by Reginald M. Wooten, a/k/a "Noble R. Asanti, Ali?"

_____(a)  organizer or leader of criminal activity that involved five or more participants or was otherwise extensive

_____(b)  manager or supervisor of a criminal activity that involved five or more participants or was otherwise extensive

_____(c)  organizer, leader, manager, or supervisor other than (a) or (b) above

_____(d)  no aggravating role

_____     _____
Date                Signature of Foreperson [Juror Number]

### APPENDIX E

### *United States v. Harris, et al.,* Criminal No. 03–354(JBS)

### Additional Sentencing Facts Jury Verdict Form

### Question 6

### ADDITIONAL SENTENCING FACTS JURY VERDICT FORM

We, the unanimous Jury, find as follows:

### 6. OBSTRUCTING OR IMPEDING THE ADMINISTRATION OF JUSTICE

A. Do you find that William Oscar Harris, a/k/a "Oscaro El Hari, Bey," obstructed or impeded the administration of justice during the course of the investigation or prosecution of this matter?

No_____    Yes_____

B. Do you find that Reginald David Lundy, a/k/a "Noble R. Dauud Lundi El, Bey," obstructed or impeded the administration of justice during the course of the investigation or prosecution of this matter?

No_____    Yes_____

C. Do you find that Reginald M. Wooten, a/k/a "Noble R. Asanti, Ali," obstructed or impeded the administration of justice during the course of the investigation or prosecution of this matter?

No_____    Yes_____

D. Do you find that Arthur T. Outterbridge, a/k/a "Arthor Tomas Ottobrice, Bey," obstructed or impeded the administration of justice during the course of the investigation or prosecution of this matter?

No_____    Yes_____

E. Do you find that Robert McCurdy, a/k/a "Al Ruberto Moor Core, Dey," obstructed or impeded the administration of justice during the course of the investigation or prosecution of this matter?

No_____    Yes_____

_____
Date        Signature of Foreperson [Juror Number]

### ORDER REGARDING JURY TRIAL OF SENTENCING FACTS

This matter coming before the Court on the objections filed to the Government's Notice of Sentencing Facts by counsel for defendants Arthur T. Outterbridge, a/k/a "Arthor Tomas Ottobrice, Bey," and Robert McCurdy, a/k/a "Al Ruberto Moor Core, Dey," and joined by counsel for defendants William Oscar Harris, a/k/a "Oscaro El Hari, Bey," Reginald David Lundy, a/k/a "Noble R. Dauud Lundi El, Bey," and Reginald M. Wooten, a/k/a "Noble R. Asanti, Ali," [Docket Items 282–1, 283–1]; the Court having heard the arguments of counsel; for good cause and the reasons expressed in an Opinion of today's date;

IT IS, this *18th* day of August, 2004 hereby

ORDERED that the objections filed to the Government's Notice of Sentencing Facts by counsel for defendants Arthur T. Outterbridge, a/k/a "Arthor Tomas Ottobrice, Bey," and Robert McCurdy, a/k/a "Al Ruberto Moor Core, Dey," and joined by counsel for defendants William Oscar Harris, a/k/a "Oscaro El Hari, Bey," Reginald David Lundy, a/k/a "Noble R. Dauud Lundi El, Bey," and Reginald M. Wooten, a/k/a "Noble R. Asanti, Ali," [Docket Items 282–1, 283–1], be, and hereby are, *DE-NIED.*